## MILLER *et al. v.* MILLER *et al.*

1. Where a father, as the legal guardian of certain of his minor children, petitions the ordinary for leave to invest a certain fund of his wards in land, and under an order granted for this purpose he, as

| 105 | 305 |
| 107 | 666 |
| 109 | 261 |
| 105 | 305 |
| 110 | 118 |
| 105 | 305 |
| f112 | 496 |
| 105 | 305 |
| e117 | 347 |
| 105 | 305 |
| 120 | 407 |
| 105 | 305 |
| f127 | 681 |
| 105 | 305 |
| 130 | 475 |

an individual, conveys to himself, as guardian, certain lands, no part of the lands thus conveyed can be treated as an advancement to these children, although the land may be worth more than the fund which originally belonged to the wards.

2. There was no error in excluding testimony offered which tended to show that the father intended any portion of the investment as an advancement.

3. The title to a year's support, set aside to a widow and her minor children, vests absolutely in the widow and children. Upon the marriage of one of the minors before the payment of such support by the administrator, no portion of the support should, on that account, pass back into the estate of the decedent for distribution among heirs and creditors.

Argued June 17,—Decided July 26, 1898.

Exceptions to auditor's report. Before Judge Henry. Floyd superior court. July term, 1897.

J. J. Miller died on October 20, 1894, leaving a widow, Martha G., and five children. Of these, Frank W. Miller and Ella. Rich are children of a former marriage. The second marriage was on September 16, 1866, said Martha G. then being the widow of William Ware; and at the time of this marriage was pending her proceeding to have assigned to her dower in the lands of William Ware. The dower was set apart in 1867, the same being 143 acres, consisting of lots 245, 244, 189 (except five acres on the east side), the west half of 246, and eight acres on the east side of 190, all in the third district and fourth section of Floyd county. J. J. Miller bought of the heirs at law of William Ware (subject to said claim of dower) the lands just mentioned and other lands, the whole being about 450 acres more or less. In 1879, J. J. Miller brought his petition to the ordinary of Floyd county, setting forth that, as guardian of his three children by his second marriage, he had received $1,146.21 from J. H. Cooper, trustee of Martha G. Miller and children, the same being known as part of the Ford trust estate, and he desired to invest said fund in the undivided three-fifths of said 450 acres of land for which he had paid to the heirs of Ware the sum of $1,375 in cash, and which interest was well worth that sum at the time of bringing this petition; that he was willing to convey said three-fifths interest to his said three wards, share and share alike, in consideration of the fund in

his hands ; that it was his purpose to arrange the other two-fifths; interest in said land and convey the same to his two children by his first wife, so that the whole tract, subject to the dower of petitioner's wife, would belong to said five children share and share alike. He prayed for an order authorizing said invest-ment to be made. The ordinary granted the order as prayed for, and on June 2, 1879, J. J. Miller conveyed to himself as guardian of his three younger children, Minnie G., Cora L., and Adella J., said three-fifths interest, which conveyance was duly recorded. At the time of his death, his youngest child, Adella J., was a minor. She attained majority on May 24, 1895, and had married about two months before that date. Mrs. Martha G. Miller elected to take à child's share in lieu of dower in the lands of the deceased ; and upon her petition for the setting apart of year's support, commissioners appointed by the court of ordinary set apart for that purpose the sum of $240, and in addition all the household and kitchen furniture and domestic fowls. An appeal was taken, but was dismissed on November 4, 1895, by consent of the parties. The administrator of J. J. Miller paid to the widow $108.48 on said year's support. When it was set apart, Adella Miller was living with her mother, and so remained until her marriage.

A petition brought by the administrator, for interpleader and direction, was answered by Frank W. Miller and Ella Rich, in which they set up that the conveyance of 1879, from J. J. Miller to himself as guardian, was made in part consideration of the money received by him belonging to his wards and partly as an advancement by him to them of their share in his estate to the amount of $3,913.89, this sum being the excess of value of the lands so conveyed above the money of said wards received by said guardian ; and that respondents are entitled to share equally, not only in the two-fifths remainder interest in said lands, but in the three-fifths undivided interest conveyed by Miller to himself as guardian, after deducting the money received by him as guardian, said interest being thrown into hotchpotch ; or else, respondents should be decreed to have title to said two-fifths remainded interest encumbered with the widow's dower, Miller having died intestate and having advanced to his three

younger children a portion of their shares of his estate. Respondents show that they helped to earn the purchase-money with which said estate was bought, never receiving any return except a mere livelihood, and this too after they were of age. They further say, that the portion of the year's support set aside for Adella Miller during her minority and while under her mother's care was terminated when Adella married, and that said sum reverted to the estate, which had not been expended and which had been set apart for her care and support.

The case having been referred to an auditor, he reported, in brief, as follows: The statement of Miller, in his petition to the ordinary, that he intended to convey the two-fifths interest in remainder to his two children by his first wife, can not affect the rights acquired by his three younger children under his deed to himself as guardian. They took by purchase. In no sense can it be regarded as an advancement to them out of his estate. He was their guardian, used their money for his individual purposes, made an unauthorized and illegal investment of their funds, as guardian dealt with himself as an individual; and if his wards have received any benefit therefrom, neither his estate nor his heirs at law can complain or ask for any benefit to themselves. The auditor then proceeds to state his findings as to the property of which the decedent's estate consists, and recommends that the administrator sell and convey the same, and out of the proceeds pay off the balance due to the widow on the year's support set apart, the cost of administration and of this litigation, and the debts due by the estate, and divide the balance equally between the widow and the five children, share and share alike. To this report Frank W. Miller and Ella Rich filed exceptions which the court overruled, and to this ruling they excepted. These exceptions set up that the auditor erred:

1. In holding that the three younger children took an undivided three-fifths interest, under the conveyance from J. J. Miller, by purchase and not as an advancement or provision in anticipation of their heir's share in his estate, and that the remaining two-fifths interest was to be divided among all the children without requiring the three younger ones to make hotchpotch with the exceptors, valuing the estate at what it was worth at

the time of said conveyance. The evidence shows that said conveyance was expressed, understood, and accepted by all parties and intended as an advancement of their heir's share of the estate. The trust fund was largely put back on this same property in improvements, and at the time of said conveyance the land was worth nearly four times as much as the fund received by Miller as guardian. The petition to the ordinary declares that his three younger children were thereby getting their share of his estate, and that the balance would go to the exceptors; and the conveyance having been made under this petition, these declarations estop the younger children from controverting the provisions thereof so long as they hold or claim title thereunder.

2. In excluding the following testimony of F. L. Miller, a brother of J. J. Miller: I had frequent conversations with him before his death, regarding the disposition of his property, the last of which was about a year before he died. He stated repeatedly that he intended to divide his estate equally among his children; that he had already provided for the children by his last wife, and the rest of his real estate he intended for Frank and Ella; and that Frank and Ella had helped work to make this property. In making the deed to the three younger girls, my brother stated that he was providing for them what he was intending to give them out of his estate, the balance to go to Frank and Ella. I also understood from him that in this division he set off Frank's and Ella's labor against any money belonging to the three younger children invested in said property. Frank lived with him after he was twenty-one years of age. I am familiar with the lands belonging to the estate. When my brother made the conveyance in 1879, lands adjoining and of like character were worth fifteen dollars per acre, and I would say that his lands were worth about the same amount at that time. He was a good farmer; he had done a great deal of clearing, put up fences, and otherwise added to the value of the land.

3. In ruling out the testimony of S. T. Mize, that Miller told him in the spring of 1894 that his three younger children had their part of the property at that time, and that he intended that Frank and Ella should also have their part. The Miller lands were worth about fifteen dollars per acre in 1878 or 1879. They would probably have brought more.

4. In ruling out the following testimony of Frank W. Miller: In the fall of 1894, my father stated to me that he intended that Ella and I should share equally in his property with the other children, and went so far as to say that he was going to fix it that way. He said he had already made a deed to three fifths of the property to my three younger sisters, giving them their share in the property. I lived with my father until I was 25 years old, except a part of six months. When I lived with him I worked for him. My sister Ella also was with him until she was about 25 years old. Neither she nor I received any compensation from him for our services, save what we ate and wore, except he gave me a horse after I was 25 years old. When my father made the deed in 1879, the property was worth fifteen dollars an acre. Of the trust fund we got from the Ford estate, about $650 was invested by him in building a house on the dowry property. This was the home in which we lived. The balance of the fund was used by him in buying from the heirs of Ware their several interests in this particular property. My father told me that, after the making of the deed to my three younger sisters, the balance of the property was to go to my sister Ella and myself. He stated to me that I had helped him make the money to pay for the land, and that he intended that Ella and myself should have the remaining two fifths of the property that had not been deeded; that he thought the work Ella and I had done would balance with the money invested on account of the younger children, and that upon this basis there would be a balance all around.

5. In excluding testimony of A. L. Rich and W. F. Montgomery, showing similar declarations of J. J. Miller made to them.

6. After finding that the year's support attempted to be set apart to Adella Miller was not hers, nor was it set apart to her, the auditor erred in finding that the remaining portion of said year's support should be paid over to the widow. Exceptors show that this year's support was attempted to be set apart to the widow to the extent of one half of $240 and for Adella Miller to the extent of the other half; and it is contended that this other half should remain in the estate as a part of it.

*A. G. Ewing* and *Wright & Ewing,* for plaintiffs in error.

*J. Branham, Nat Harris* and *J. B. F. Lumpkin,* contra.

SIMMONS, C. J.   1. Under the facts of the present case, there was no error in overruling the objections to the report of the auditor.   Plaintiffs in error claim that the land conveyed by Miller to his three wards was worth much more than the amount which he received for it, and that the excess of this value should be treated, in the distribution of Miller's estate, as an advancement to the wards, children by his second wife. We think it can not be so treated.   The transaction which he, as guardian, entered into with himself as an individual, with the approval of the ordinary, was in the nature of a bargain and sale.   He was willing as an individual to sell to himself as guardian the three-fifths interest in the land for the amount of money which belonged to his wards.   If the three-fifths undivided interest was worth more than he agreed to take for it, he must have known it and must at that time have been willing, for the $1,146.21, to put in his wards the title to this interest. If he were living and the wards had sued him for the land, he would be estopped from setting up the fact that the land was worth more than he received for it.   If he could not himself legally set up such a claim, his children by his first wife can not do so, although, after the conveyance had been made to himself as guardian, he may have made declarations to the effect that he intended the excess in value of the land as an advancement to his wards, and although he alleged in his petition to the ordinary that he intended to give the other two-fifths undivided interest in the land to his two children by his first wife so as to make them equal to the three by his second wife.

2. The above being true, there was no error in excluding testimony to the effect that Miller had said upon divers occasions that he intended the excess in the value of the land as an advancement, and that he had made other declarations tending to show that he intended to give his other children (those by his first wife) the other two-fifths interest so as to make them equal to the others.   The petition to the ordinary and the deed made in pursuance thereof, in which there was no reservation of this sort, would, as before remarked, estop him and his privies from making any such claim to the excess in the value of the land over the amount he received for it.

3. When Miller died, his widow applied for and had set apart a year's support for herself and minor child. When a year's support is thus set apart, the title to the property vests at once in the widow and minor child and can not be administered as the estate of the deceased husband and father. Civil Code, § 3468. If it be set apart for them jointly, they own it in common. If set aside separately, a certain amount to each, what is set aside to the widow vests in her and what is set aside to the child vests in the child. It does not appear from the record whether this year's support was set apart jointly or severally to the widow and child, nor does it matter so far as the present case is concerned. In neither event would the child's share revert to the estate of the intestate upon the marriage of the child. If the year's support was set aside to the widow and child jointly, the widow is entitled to use and control it as long as the money lasts or as long as she lives, even though the child marry or become of age. The child, in such case, can not force a division of the property so set apart. *Whitt* v. *Ketchum,* 84 *Ga.* 128; *Roberts* v. *Dickerson,* 95 *Ga.* 727. If a portion of the year's support was set apart to the child separately, the title vested in the child, and the property does not revert to the estate of the father in the event of the child's marriage or death.

*Judgment affirmed. All the Justices concurring.*