## WISE *v.* WISE (two cases).

1. The refusal of the judge to grant a new trial on the ground that the verdict was unauthorized by the evidence and excessive in amount, being for decision by a full bench of six Justices, who are evenly divided in opinion, Russell, C. J., and Atkinson and Hines, JJ., favoring an affirmance of the judgment as to this ground, and Beck, P. J., and Hill and Gilbert, JJ., favoring a reversal thereon, the judgment of the trial court refusing a new trial as to this ground stands affirmed by operation of law.

2. In a suit for divorce, where the final verdict granting the wife an absolute divorce awards to her as permanent alimony specific real estate and negotiable securities and a stated amount of money, the wife is entitled, under the statutes of this State, to a decree vesting absolute legal title to the property in her, without any restrictions or limitations as to its disposition or enjoyment. Applying this principle, the judge erred in restricting the wife to the use of income from property of the character above mentioned.

3. In a suit instituted by a wife for a divorce and permanent alimony, where the verdict of the jury grants a final divorce between the parties and awards to the wife specified property, as indicated in the preceding division, as permanent alimony, there is no provision of law which authorizes the judge in rendering a decree on such verdict to direct that the fees of the attorneys for the plaintiff be paid out of the property awarded as permanent alimony.

4. Where property is awarded as permanent alimony under circumstances stated in the preceding notes, it is not erroneous to refuse to include in the decree a provision that the wife, as a condition to receiving the property, shall give security for the forthcoming of the property at the death of the wife, or to appoint a receiver to hold the property and pay income therefrom to the wife.

Nos. 3397, 3418. September 26, 1923.

Divorce and alimony. Before Judge Malcolm D. Jones. Bibb superior court. August 8, 16, 1922.

The exceptions in these two cases raise questions as to whether a new trial should have been granted after a second verdict for the plaintiff in a suit for divorce and permanent alimony, and questions as to an appropriate decree based on such verdict. The assignments of error relate exclusively to the matter of amount of alimony that should have been allowed the plaintiff, and the form of the decree in respect to the interest of the wife in the property awarded her by the jury and her power of disposal over it. A statement of the case follows.

Henriette Wise instituted an action for divorce and permanent alimony against Basil A. Wise, on the grounds of alleged cruel treatment. The petition contained also a prayer for the appointment of a receiver. A schedule of property alleged to belong to the defendant was attached to the petition, marked " Exhibit A." The property consisted of separate parcels of realty as described in paragraphs one, two, and three of the schedule, on which were outstanding encumbrances; certain promissory notes secured by security deeds from H. L. Johnson, Dan Gross, and Hazel Paul severally; certain stock in the Northern Heights Land Company; and certain cash. One verdict was found for the plaintiff, and at the final trial evidence material to the questions as to proper amount of alimony tended to show the following: The plaintiff was a native of France. The marriage occurred in France while the defendant was a soldier in the United States Army. After the marriage and close of the war the defendant returned to America, bringing plaintiff with him to Macon, Georgia, where they resided at the home of defendant's mother. Defendant abandoned plaintiff and enlisted in the United States Navy. An agreed statement of facts showed that the entire property of the defendant and its estimated value was as follows. " (a) The real estate as described in paragraphs one and two of Exhibit ' A ' to plaintiffs petition, subject to the encumbrances thereon,

$500.00.   (b)  The deeds to secure debt and the indebtedness secured thereby from H. L. Johnson to B. A. Wise, and the deeds to secure debt and the indebtedness secured thereby from Dan Gross to B. A. Wise, $1130.00.   (c)  The stock owned by B. A. Wise in the Northern Heights Land Co., $900.00.   (d)  Cash, $500.00.   (e)  A legacy payable to B. A. Wise, under the will of Mrs. M. G. L. Ellis, $250.00."

The agreed statement of facts contained further matters as follows: " The defendant is a corporal in the Marine Corps of the United States, and as such corporal, over and above his pay, is fed, clothed, and housed by the Navy Department of the United States.  At the time of the filing of the answer by the defendant in this case he was an enlisted man in the Marine Corps, and was stationed at Port au Prince, Haiti.   Under a treaty existing between the United States and Haiti, he was, at the time of the filing of his answer, acting as a Lieutenant in the Gendarmarie d' Haiti, serving under the control and direction of the Haitian Government.   He is not and was not a commissioned officer of the United States, and holds no rank in the Marine Corps save that of corporal.   His duty at Haiti was purely temporary, he being at all times subject to the orders of the Marine Corps of the United States, and being liable to being moved away from Haiti at any time.   While he was stationed at Haiti, and while acting as a Lieutenant of the Gendarmarie d' Haiti, he was paid the sum of fifty dollars per month by the United States Government as a corporal of the Marine Corps, and in addition to this fifty dollars per month he was also paid by the United States Government the sum of two dollars and fifty cents per day as living expenses. In addition to these two sums, up to April 1st, 1922, he drew a compensation of five dollars per month as an expert marksman. During the month of June, 1922, he was ordered by the Navy Department away from Haiti and to Quantico, Virginia.   As soon as he was withdrawn from Haiti by the Navy Department his sole compensation was, and is, fifty dollars per month, the pay of a corporal.   He is now stationed at Quantico, Virginia, serving as a corporal in the Marine Corps of the United States, and receiving the pay of a corporal of that Corps, or fifty dollars per month." The plaintiff testified: " I remained at the home of the defendant, notwithstanding his cruel treatment of me, because I had no where

else to go. . . I had no relative in America to whom I could go. I had no property or money, and no way to earn a living. Prior to my marriage to defendant I had never been away from France, and I knew nothing of the English language. After the separation the defendant did not communicate with me, or let me know where he was, or send me any money. Since the separation I have not been able to earn my living. I have attempted to teach French, and have worked at Smith-Thompson Company, but I have been unable to earn sufficient money to support myself. I have had to sell all my personal jewelry and use the money to support myself. It is hard for me to get a position at all, and practically impossible for me to get one that will pay me a living wage. I have no independent means of support."

The second verdict for the plaintiff was as follows: " We the jury find that sufficient proofs have been submitted to our consideration to authorize the grant of a total divorce, that is to say, a divorce a vinculo matrimonii, upon legal principles, between the parties to this case. We further find that both parties may marry again. We further award the following property to the plaintiff as permanent alimony: (1) The real estate as described in paragraphs one and two of Exhibit ' A ' to plaintiff's petition, subject to encumbrances thereon. (2) The deeds to secure debt and indebtedness secured thereby from Dan Goss to B. A. Wise, as set out in said exhibit. (3) Stock owned by said Basil A. Wise in the Northern Heights Land Co. (4) All cash in hands of receiver after payment of costs of receivership. We also find that the defendant shall pay to the plaintiff as permanent alimony, in addition to the above property and money, the sum of $40 per month until the death or remarriage of plaintiff." After rendition of the verdict the defendant orally requested the judge to decree that plaintiff be required, as a " life-tenant," to execute bond before going into possession and control of the personal property mentioned in the verdict; or in lieu thereof that the court appoint a receiver to take over and manage the property awarded by the jury and pay to plaintiff the rents, issues, and profits arising from such property. The plaintiff orally requested the court to render a decree whereby she would be permitted at any time to sell the entire and absolute interest in any or all of the property awarded

to her by the jury; and as to any of the property that may now be or that may become unproductive of income, that she may be permitted to sell it for reinvestment. The decree as rendered expressly refused each of the requests. Other provisions of the decree relating to alimony and disposition of the property were: " It is further ordered, adjudged, and decreed by the court that out of the award made by the jury to the plaintiff as permanent alimony, the sum of two hundred and fifty dollars be paid by the receiver of this court in this case, out of the cash now in his hands, or that may come into his hands, to Messrs. Powers & Powers, the attorneys of record for the plaintiff in this case, as counsel fees; this payment to be in full and final satisfaction for such services. It is further ordered, adjudged, and decreed by the court that the remainder of the cash, after the payment of the counsel fees as herein ordered, and the property awarded by the jury to the plaintiff as permanent alimony, and now held by the receiver of this court, be delivered over by the said receiver to the said plaintiff, Henriette Wise, to vest in and be held by said plaintiff, Henriette Wise, for and during her lifetime, or until she should marry again, the income only therefrom to be expended by her for her support and maintenance. . . It is further ordered, adjudged, and decreed by the court that the defendant pay over to the plaintiff the sum of forty dollars per month, without any restrictions as to her use and enjoyment thereof, payable on the 21st day of each month, until the death or remarriage of the said plaintiff; and that the defendant pay all costs of this proceeding to be taxed by the clerk."

After rendition of the decree the defendant made a motion for a new trial, based on the usual general grounds, and: " (4) Because the entire estate of this defendant amounted to property of the value of $3280.00, and his earning capacity amounted to fifty dollars per month. The finding of the jury was an award out of the estate of the defendant amounting to $3030.00 and a further award of forty dollars per month to be paid by the defendant to the plaintiff out of his earnings. This verdict of the jury was grossly excessive, and was contrary to law and the principles of equity and justice." The judge refused a new trial. Thereafter the defendant made a motion to modify the decree so that it should require the plaintiff, with respect to the property awarded to her by the jury, " to furnish a good and sufficient bond, payable to the

defendant, providing for the forthcoming of the above set forth property so awarded to her, at the termination of the estate created by said award; or, in lieu thereof, that the receiver of this court, in this case, do hold said property, as above set forth, in his possession, custody, and control, paying to the plaintiff the rents issues, and profits arising from said property so held by him." This motion was also overruled. The defendant excepted to each of the rulings just stated. In a separate bill of exceptions the plaintiff assigned error as follows: (*a*) On that portion of the decree which orders that the fees of the attorney for plaintiff be paid out of the property set apart to her by the jury as permanent alimony; the ground of exception being that such fees were chargable under the law to the defendant. (*b*) On that portion of the decree which limits the right of plaintiff to the property set apart to her by the jury, by providing that such property shall " vest in and be held by said plaintiff, Henriette Wise, for and during her lifetime, or until she should marry again, the income only therefrom to be expended by her for her support and maintenance." The ground of exception was that such restriction was contrary to law, it being the law that " an award of money or property or both as permanent alimony is an award to the wife for her support and maintenance in the rank and condition of society in which she lives, and is not an award solely of the income therefrom, and that she is entitled to the free use and enjoyment of so much of the corpus as well as of the income therefrom as is needful to support and maintain her in the rank and condition of society in which she lives." (*c*) On so much of the decree as refused the prayer of the plaintiff for leave to sell the property awarded as permanent alimony. The ground of exception was: " The court in passing said order stated that, having ruled that the award of permanent alimony vested in the plaintiff only a life-estate therein, it was without power to authorize the sale of the fee-simple interest therein upon any ground or for any purpose. To which said judgment of the court the plaintiff then and there excepted, now excepts, and assigns the same as error upon the ground that the same is contrary to law, for the reason that even if said award of permanent alimony vested in plaintiff only a life-estate, it was still within the discretion of the court to so mould its decree as to carry into effect the verdict of the jury, and that

this effect could only be attained by authorizing a sale for reinvestment of so much of the property awarded as was or might become unproductive of income. The court declined to grant plaintiff the right to sell, not as an exercise of its discretion, but solely upon the ground that it was without power to do so."

*Powers & Powers,* for plaintiff.

*Charles H. Hall,* for defendant.

ATKINSON, J. 1, 3. The rulings announced in the first and third headnotes do not require elaboration.

2. The verdict granted an absolute divorce between the parties, and awarded permanent alimony to the wife. Specific property, consisting of realty, negotiable securities, and a certain amount of money, was awarded to the wife by the jury, "as permanent alimony." As to all that property the decree restricted the enjoyment of the wife to income therefrom during her life. The decree should carry the verdict into effect, not destroy it. Civil Code, § 2961; *Gilbert* v. *Gilbert,* 151 *Ga.* 520, 523 (107 S. E. 490). The verdict awarded the specific properties to the wife "as permanent alimony." Does such award limit enjoyment of the property to income? In so limiting the enjoyment by the decree the judge proceeded on the theory that the jury was restricted by law and prohibited from awarding to the wife an absolute or fee-simple interest in the property awarded to her. Anciently alimony was only allowed while the marriage relation existed. Permanent alimony in conjunction with an absolute divorce was entirely unknown to either the common law or the ecclesiastical law. 1 R. C. L. 921, § 70. In this State alimony is provided for by statute, and a decision of the question under consideration must be determined on the basis of the statutes making provision for support of the wife after a final divorce. The term "alimony" was not used in any of the constitutions or statutes of this State prior to the first revised code, which was finally adopted by the act of the legislature of 1861 (Acts 1861, p. 28), and became effective January 1, 1863. Prior to the adoption of the above mentioned code the act approved December 5, 1806 (Acts 1806, p. 16), was effective. At the time of the passage of that act the constitution of 1798 was in effect. It may be stated parenthetically that the 9th section of article 3 of that constitution declared: "Divorces shall not be granted by the legislature until the parties shall have had a fair

trial before the superior court and a verdict shall have been obtained, authorizing a divorce upon legal principles; and in such cases two thirds of each branch of the legislature may pass acts of divorce accordingly;" and that that provision of the constitution was amended by the act of 1833 (Acts 1833, p. 47), which was duly ratified as required by the constitution for its amendment, the amendment dispensing with legislative action and providing in lieu thereof that " Divorces shall be final and conclusive when the parties shall have obtained the concurrent verdicts of two special juries authorizing a divorce upon legal principles;" also that the constitution as thus amended is now superseded by article 6, section 15, paragraph 1, of the constitution of 1877 (Civil Code of 1910, § 6536), which declares: " No total divorce shall be granted, except on the concurrent verdicts of two juries at different terms of the court."

In section 1 of the act of 1806, supra, it was provided: " That the divorces recognized by this act shall be absolute, and totally dissolve the marriage contract, or conditional, and only separate the parties from bed and board, and provide for the separate maintenance and support of the parties and their issue." Section 2 provides for the trial of cases for divorce by a special jury, " who shall enquire into the situation of the parties before their intermarriage, and also at the time of trial; and in all cases where they shall determine in favor of a conditional divorce, they shall by their verdict or decree make provision, out of the property of which the husband may be possessed, for the separate maintenance and support of the wife and the issue of such marriage; which verdict or decree the said court shall cause to be carried into effect according to the rules of law, or according to the practice of chancery, as the nature of the case may require." Section 3 has reference to the removal of disabilities with respect to marrying again. Section 4 provides: " That in all cases where the special jury shall have brought in a verdict for an absolute divorce, and the General Assembly shall refuse to pass a law to carry the same into complete effect, it shall be lawful for either party to apply to the Superior Court, . . and it shall· be the duty of such court to appoint three commissioners, who shall enquire into the situation of the parties before their intermarriage, and also at the time of such enquiry; and shall determine upon the support or

provision which may be necessary for the separate maintenance of the wife, having due regard to her situation before marriage, and also of the situation of the husband at the time of such enquiry." Further provision was made in section 4 for report of the commissioners to the court, and for rendition of a decree by the court on the basis of such report. Section 5 related to powers of the commissioners in reference to the selection of places of holding their meetings and compelling witnesses to testify, etc. Section 6 relieved the husband from liability on contracts of the wife after he had made provision for her support in accordance with the act. Section 7 provided that divorces should not affect the legitimacy of the issue of the marriage. Section 8 provided: "That in all cases of applications for a divorce, the party applying shall render a schedule, on oath, of the property owned or possessed by said parties at the time of such application, or, if the parties have separated, at the time of such separation, which shall be filed of record by the clerk of the Superior Court, and, after all just debts shall be paid, shall be subject to a division or equal distribution between the children of such parties, except the jury before whom the same may be tried shall think proper to allow either party a part thereof."

It will be perceived that while the act of 1806, supra, contained provisions relating to maintenance of the wife out of the property of the husband in cases of divorce, it did not use the term "alimony," or contemplate separate maintenance of the wife under any other conditions except in cases of partial or total divorce. The first code (the Code of 1863) was adopted by the legislature and had the effect of statutory law. Except in so far as the provisions of the act of 1806 were carried into the code, they were superseded. The code employed the term "alimony," and made provision for its allowance not only in the case of divorce but also in cases of voluntary separation between husband and wife, and cases where the wife against her will was abandoned or driven off by the husband. The provisions for alimony founded on divorce were in separate sections of the code from those founded on voluntary separation and abandonment of the wife. With respect to alimony founded on divorce it was said in § 1676, which is now Civil Code § 2954: "In all suits for divorce, the party applying shall render a schedule, on oath, of the property owned or possessed by the

parties at the time of the application — or at the time of the separation, if the parties have separated,— distinguishing the separate estate of the wife, if there be any, which shall be filed with the petition, or pending the suit, under the order of the court. The jury rendering the final verdict in the cause may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband and the source from which the property came into the coverture." In § 1677, which is now Civil Code § 2955, it was declared: "After a separation, no transfer by the husband of any of the property, except bona fide in payment of pre-existing debts, shall pass the title so as to avoid the vesting thereof according to the final verdict of the jury in the cause." In § 1678, which is now § 2956 of the Civil Code, it was declared: "The verdict of the jury shall specify the kind of divorce granted, and the disposition to be made of the scheduled property." In § 1680, which is now § 2961 of the Civil Code, it was declared: "The verdicts of juries disposing of the property in divorce cases shall be carried into effect by the courts, by entering up such judgment or decree, or taking such other steps, usual in chancery courts, as will effectually and fully execute the same."

Immediately following the above was a separate division of the code, the pertinent portions of which follow: In § 1688, which is now § 2975 of the Civil Code, it was declared: "Alimony is an allowance out of the husband's estate, made for the support of the wife when living separate from him. It is either temporary or permanent." In § 1693, which is now § 2983 of the Civil Code, it was declared: "Permanent alimony is granted in the following cases: 1. Of divorce, as considered in the former section [§ 1676 Code of 1863; 2954, Civil Code of 1910]. 2. In cases of voluntary separation. 3. Where the wife, against her will, is either abandoned or driven off by her husband." In § 1696, which is now § 2988 in the Civil Code, it was declared: "Until such provision is made, voluntarily or by decree or order of the court, the husband shall be liable to third persons for the board and support of the wife, and for all necessaries furnished to her, or for the benefit of his children in her custody." In § 1697, which is now § 2989 of the Civil Code, it was declared: "When permanent alimony is granted, the husband ceases to be liable for any debt or

contract of the wife; on the other hand, he ceases to have any power to control her acquisitions by purchase, or descent, or gift, or otherwise; and the property of the husband set apart for the support of the wife is not subject to his debts or contracts as long as she lives." In § 1698, which is now § 2990 of the Civil Code, it was declared: "The subsequent voluntary cohabitation of the husband and wife shall annul and set aside all provision made, either by deed or decree, for permanent alimony. The rights of children under any deed of separation or voluntary provision or decree for alimony shall not be affected thereby." In § 1699, which is now § 2991 of the Civil Code, it was declared: "After permanent alimony granted, upon the death of the husband the wife is not entitled to any further interest in his estate in her right as wife, but such permanent provision shall be continued to her, or a portion of the estate equivalent thereto shall be set apart to her."

In *Gholston* v. *Gholston,* 54 *Ga.* 285, the act of 1806 supra, was construed and applied. The case arose prior to the adoption of the Code of 1863, while the act was as indicated above, and before it was affected by any changes brought about by the adoption of the Code of 1863. It was held that in a divorce suit it was competent for the jury to distribute the property between the parties and their children, and that a verdict that the wife "should have a certain tract of land" conferred upon her the fee-simple title to the land, and not a mere life-estate. In the opinion it was said: "Under this statute, . . the whole subject was open to the jury. . . The plain common-sense meaning of the verdict is to declare that the land shall be the property of the life." While the case originated before adoption of the code, it was not tried until 1874. In the meantime the code had been adopted and the case of *Odom* v. *Odom,* 36 *Ga.* 286 (which arose after adoption of the code); was decided. Under these circumstances the decision in *Gholston* v. *Gholston,* supra, went further, holding that the code was not retroactive, and that the old law applied, and said: "By the Code of 1863, as was held by this court in *Odom* vs. *Odom,* 36 *Georgia,* 319, this rule was changed, and under the law since the Code the jury can only give the wife alimony, and that is defined in 1736 [Code of 1873; 1688 in Code of 1863; 2975 in Civil Code of 1910] and other sections, as a provision for the support of the wife at most for her life."

The *Odom* case was a suit by the wife for divorce and permanent alimony. The report of the case shows: " The schedule of property filed footed up $39,266.00, which was made up of a plantation, 808 acres, in Macon county, estimated at $5,656.00; fifty bales of ginned cotton, estimated at $7,500.00; thirty-six bales of cotton unginned, estimated at $4,800.00; growing crop estimated at $9,000.00, stock, furniture, etc. A note to the schedule set forth that by the marriage he got with her $6,000.00 in cash, nine slaves, and the use of thirty-eight or nine slaves in which she had a life-estate, that she had nothing but a note on him for $3,000.00, which she was not certain of collecting, and that she believed he had money due to him of which she could give no specific statement." The jury returned a verdict granting the wife a final divorce, and " that said libelant do recover from said defendant ($12,000) twelve thousand dollars." The defendant filed a motion for new trial, upon eleven grounds, in the last of which it was complained that " the allowance of permanent alimony by the jury is unlawful in this: that the amount is given to libelant generally and in fee simple." Relating to this portion of the motion for new trial it was said by Warner, C. J.: " The only remaining question for us to decide is, what is the legal effect of the verdict of the jury as to the sum of money awarded to the plaintiff. By the 1676th [2954 in Code of 1910] section of the Code it is provided that a schedule of the property shall be filed, and that ' the jury rendering the final verdict in the case may provide *permanent alimony* for the wife, either from the *corpus* of the estate, or *otherwise,* according to the condition of the husband, and the source from which the property came into the coverture.' The 1688th section of the code [2975 in Civil Code of 1910] declares, that ' *alimony* is an allowance *out of the husband's estate,* made for the *support* of the wife when living separate from him. It is either temporary or permanent.' *Permanent alimony* is granted in the following cases. First, of *divorce,* as considered in section 1676 [2954 in Civil Code of 1910]; second, in cases of voluntary separation; third, where the wife, against her will, is either abandoned or driven off by her husband — Code, section 1693 [2983 in Civil Code of 1910]. Alimony is that allowance which is made to a woman for *her support* out of the husband's estate. It is generally proportioned to the rank and quality of the parties. 1st Bl. Com. 441.

"By the old law, as it stood at the time of the adoption of the Code, the property was to be equally divided between the children of the parties, unless the jury should think proper to allow either party a part thereof. Cobb's Dig. 225. The legislature, at the time of the adoption of the Code, must be presumed to have known what the old law was upon this subject. The term 'alimony,' as expressed in the Code, is therefore to be construed in its legal technical sense. Permanent alimony is to be granted to the wife only in three cases — First, where there is a total divorce; second, in cases of voluntary separation; third, where the wife, against her will, is either abandoned or driven off by her husband. In each of the cases enumerated [cases of voluntary separation and abandonment or driving the wife away], permanent alimony is allowed for the *support* of the wife out of her husband's estate. In case of a total divorce, is she entitled to anything more? Does the verdict of the jury in this case [case of absolute divorce] vest in the wife the absolute interest in the twelve thousand dollars, under the provisions of the Code, or does it vest in her that amount as *permanent alimony* out of her husband's estate for her *support* and *maintenance during life,* according to her rank and condition in society? When we look to the 1697, 1698, and 1699th sections of the Code, [2989, 2990, 2991 in the Code of 1910] regulating permanent alimony in the two specified cases, the intention of the legislature is clearly manifested in regard to *permanent alimony.* Our conclusion, then, is, that it was the intention of the legislature that, in cases of total divorce, the jury might provide permanent alimony for the wife, either from the *corpus* of her husband's estate, or otherwise, and that permanent alimony means a suitable provision for the *support* and *maintenance* of the wife, out of her husband's estate, during her life, according to her rank and condition in the community in which she resides.

"This construction of the Code, it is said, will operate harshly in this case, because the husband derived most of his property from his wife: still, it was *his property,* and the provision is made for the wife out of *his estate.* But suppose the husband had acquired no property by his wife, yet she is entitled to permanent alimony out of *his estate* for her support and maintenance during life; but would it be just and equitable at her death that the *corpus* of the property provided as permanent alimony for *her support and main-*

*tenance out of her husband's estate* should go to her legal representatives instead of her husband or his legal representatives, when she had brought nothing into the family?

" The construction which we give to the Code must operate as a general rule, applicable to all cases, as to the legal effect of granting permanent alimony out of the husband's estate, where a total divorce is granted. It is quite probable it was the intention of the legislature, in restricting the wife to permanent alimony for *her support* during life out of her husband's estate, not to offer any inducement for husband and wife to dissolve the marriage contract from merely mercenary motives as to property. The legal effect of the verdict rendered by the jury in this case, under the provisions of the Code, is to vest the amount found by them in the plaintiff as permanent alimony during her life only for her *maintenance* and *support,* according to her rank and condition in life."

The case of *Driver* v. *Wood,* 114 *Ga.* 296 (40 S. E. 257), was a complaint for land brought by Jesse Driver against Richard Wood and his landlord, W. C. Adamson, to recover a described tract of land. The plaintiff claimed title under a deed to him executed by Jacob Driver. The defendant claimed title under a deed from Nancy A. Driver and a verdict and decree rendered in a former suit instituted by Nancy A. Driver against her husband, Jacob Driver, and Jesse Driver, and others, in which she prayed for permanent alimony out of the estate of her said husband, and to cancel the above mentioned deed from her husband to Jesse Driver, on the ground that it was the result of a fraudulent scheme between the parties to defeat the recovery of alimony. The verdict was a consent verdict awarding a described portion of the land described in the deed and decreeing title thereto in the plaintiff, " in full of her allowance for permanent alimony." A decree was duly entered, decreeing that title to the land described in the verdict " vest in [Mrs. Driver] in full satisfaction of her permanent alimony." The judge directed a verdict for the defendant, and the plaintiff excepted. The judgment of the trial court was affirmed on the theory that under the undisputed evidence the verdict amounted to an agreement between Mrs. Driver and her husband, the parties to the suit, and that Mrs. Driver obtained an equitable title to the land as against her husband. In the course

of the opinion it was said: "It clearly appears from the testimony submitted in behalf of the plaintiff that the verdict and decree in the suit for alimony were rendered by consent of all parties to such suit, and that the plaintiff here was one of those parties. Although that verdict and decree, in so far as they sought to vest an absolute title, instead of a mere life-estate, in the land in question in Mrs. Driver, were void, because this was entirely outside of the issues in that case made by the pleadings, and because, under the law of this State, the court was without authority, in a suit for alimony, to decree absolute title to the wife in property of the husband, yet we are clearly of opinion that, in the absence of fraud, accident, or mistake, such consent verdict and decree operated as an agreement, binding upon all the parties thereto (*Kidd* v. *Huff*, 105 *Ga.* 209), and that Mrs. Driver thereby obtained an equitable title to the land, as against all the defendants to the suit; especially so when such agreement was executed by putting her in possession of the land, in pursuance of the agreement." That portion of the foregoing excerpt which declares: "Although that verdict and decree, in so far as they sought to vest an absolute title, instead of a mere life-estate in the land in question in Mrs. Driver, were void, . . because, under the law of this State, the court was without authority, in a suit for alimony, to decree absolute title to the wife in property of the husband," was unnecessary to a decision of the case and was mere obiter dictum, and, being such, does not constitute a ruling as a precedent binding on this court. If the pleadings in the suit for alimony did not present an issue as to the character of the estate that the wife would get in property awarded to her as alimony, there was no such issue in the complaint for land to which the decision of the court applied.

The case of *Buffington* v. *Cook*, 147 *Ga.* 681 (95 S. E. 214), was decided by five Justices, Presiding Justice Beck dissenting. It was there said: "Where in the trial of a suit for divorce the jury in the final verdict awarded to the libellant, as permanent alimony, the sum of '$35.00 per month for two years,' and where upon this verdict it was decreed that 'the plaintiff recover of defendant the sum of $35.00 . . on the first day of September, 1916, and $35.00 on the first day of each subsequent month until these monthly payments aggregate the sum of $840.00, and that this judgment be a special lien on the property scheduled in the petition, until the

total sum of alimony shall be paid as hereafter provided,' and the libellant died before the expiration of the period through which the monthly installments should be paid, her administrator could not recover, in a suit instituted therefor, the balance of the sum awarded as alimony, inasmuch as the interest of the wife in the alimony set apart ceased at her death, alimony being for the support of the wife during life. Civil Code (1910), §§ 2975, 2988, 2989, 2990; *Odom* v. *Odom*, 36 *Ga.* 286. (6) ; *Gholston* v. *Gholston*, 54 *Ga.* 285, 286." Upon construction of the foregoing statutes and consideration of the foregoing decisions by this court applying the statutes or referring to them, should it now be held that a jury in granting permanent alimony to a wife in their final verdict granting a divorce, cannot award fee-simple title to specific property? The case of *Gholston* v. *Gholston,* 54 *Ga.* 285, holds pointedly that under the act of 1806, supra, it was competent for the jury to award fee-simple title to specific property (in that case realty) to the wife. The provisions of the act of 1806 are stated above at length. One of them was that after all just debts shall be paid, "the property owned or possessed by said parties . . shall be subject to a division or equal distribution between the children of such parties, except the jury before whom the same may be tried shall think proper to allow either party a part thereof." This, according to the decision in *Gholston* v. *Gholston,* supra, put in the hands of the jury power to dispose of the property of both parties by awarding it absolutely to the children, or, should they think proper, to award a part thereof absolutely to the parties. This law as interpreted was not repudiated entirely by the Code of 1863, but with certain modifications was included in its provisions, which have been brought forward in the several successive codes and now appear in the Code of 1910. The code provisions on the subject authorize the jury rendering "the final verdict" granting a divorce also to provide "permanent alimony for the wife, either from the corpus of the estate or otherwise" (Code of 1863, § 1676; Code of 1910, § 2954). A cognate section of the code shows what was intended by use of the term "permanent alimony," the meaning being "an allowance out of the husband's estate, made for the support of the wife when living separate from him" (Code of 1863, § 1688; Code of 1910, § 2975). Another cognate section restricts the power of a husband, after separation,

to transfer his property "so as to avoid the vesting thereof according to the final verdict of the jury" (Code of 1863, § 1677; Civil Code of 1910, § 2955). Again, it is declared the verdict of the jury shall specify the kind of divorce granted "and the *disposition* to be made of the scheduled property" (Code of 1863, § 1678: Civil Code of 1910, § 2956). And again, it is declared: "The verdicts of juries *disposing* of the property in divorce cases shall be carried into effect by the courts, by entering up such judgment or decree, or taking such other steps, usual in chancery courts, as will effectually and fully execute the same" (Code of 1963, § 1680; Civil Code of 1910, § 2961).

The foregoing sections of the code bear close relation, and construed together show that a broad power of disposal of the husband's property for the support of the wife is conferred upon the jury. It was substantially as broad as was the power under the act of 1806, supra, to award a part of the property to the wife. The prime object of the law is support of the wife. The jury, in making provision for her support, may resort to the corpus of the husband's estate, or, under the expression "or otherwise," may look to any source of revenue or income or earning capacity that he may have and may require payment of money to the wife at intervals. The power to resort to corpus is unlimited as to the interest or estate in the property that might be awarded to the wife, or to the use to which it might be put. The right to occupy or to farm or let might be awarded, or the right to rents from property, interest on money, or other income might be awarded, or an estate for life to the wife or a lesser estate for years might be awarded; but the power is broad enough also to authorize the jury to *dispose* of the property and *vest* the title thereof in the wife absolutely. Circumstances might exist that would render consumption of corpus, or change in the use of corpus, or change of investment as to corpus, necessary as a means of support; and the whole object of the law might fail if the wife should be restricted as to her interest or enjoyment of property awarded to her. These and other similar matters were no doubt in the legislative mind when the law was created, and to render the law applicable to the various conditions that might arise its provisions were deliberately made broad. It was no doubt intended to give the jury power to say what interest in property of the husband the wife should have for

her support, and to award such interest to her, even to the extent of an absolute or fee-simple interest. In a given case what amount of money or property would be necessary to support the wife for the balance of her life would be a matter for ascertainment by the jury under established rules of law. In case the jury should decide to award specific property absolutely, there would be no difficulty in arriving at the amount. The provisions of the Code of 1863, §§ 1697, 1698, 1699, which in the Civil Code of 1910 are §§ 2989, 2990, 2991, all of which are quoted above, refer to the grant of alimony where the marriage relation continues or has not been dissolved by a final verdict of divorce. They contain the provisions: (*a*) "the property of the husband set apart for the support of the wife is not subject to his debts or contracts as long as she lives;" (*b*) "the subsequent voluntary cohabitation of the husband and wife shall annul and set aside all provision made, either by deed or decree, for permanent alimony;" (*c*) "after permanent alimony granted, upon the death of the husband the wife is not entitled to any further interest in his estate in her right as wife, but such permanent provision shall be continued to her, or a portion of the estate equivalent thereto shall be set apart to her." Whether or not these provisions could be applied in the case of a grant of permanent alimony where a total divorce is granted, they are not sufficient to require a different construction than that hereinbefore given to the Code of 1863, §§ 1676, 1677, 1678; which in the Civil Code of 1910 are §§ 2954, 2955, 2956.

The two sections last mentioned were overlooked entirely in the case of *Odom* v. *Odom,* 36 *Ga.* 286. If due consideration had been given them in connection with the section first mentioned and the old law, and the other sections of the code mentioned in the opinion, the decision would in all probability have been different. At any rate, under a proper construction of the Civil Code, §§ 2954, 2975, 2955, 2956, a jury rendering a final verdict granting a total divorce may award specific property to the wife as permanent alimony; and when they do so without any expressed limitations or restrictions, the award is to the property absolutely and in fee simple. This conclusion is further borne out by a consideration of Civil Code (1910) § 2983 in connection with Civil Code (1910) § 2984. By the first of these sections permanent alimony is granted in three cases: (1) of divorce; (2) of voluntary separation; and

(3) where the wife is either abandoned or driven off by her husband. By the second of these sections: " In either of the two latter cases the husband may voluntarily, by deed, make an adequate provision for the support and maintenance." If the husband, in either of these cases, by deed gives to his wife certain property for her alimony, without expressly providing that the wife shall have a life-estate therein, could it be held that his conveyance only gave to his wife a life-estate in such property? No such holding would be proper. Then, if the jury, in absence of provision by the husband for the support of his wife, gives absolutely to the wife in a divorce suit property of the husband for her alimony, why should it be held that the wife only has a life-estate therein? We see no reason for so holding. The decisions in the cases of *Odom* v. *Odom,* 36 *Ga.* 286, and *Gholston* v. *Gholston,* 54 *Ga.* 285, were each rendered by an entire bench of three Justices before the number of Justices of this court was increased to six. The decision in the latter case construed the act of 1806, supra, and applied its provisions to the case under consideration, because the case arose before the adoption of the Code of 1863, but recognized the doctrine of the decision in *Odom* v. *Odom,* supra, as applicable to a case arising after adoption of the Code of 1863. The case of *Driver* v. *Wood,* 114 *Ga.* 296 (supra), arose after the adoption of the Code, and was decided by a full bench of six Justices after the number of Justices of this court had been increased to six, and, without citing the *Odom* case, announced a similar doctrine. The case of *Buffington* v. *Cook,* 147 *Ga.* 681 (supra), being later than all the cases above cited, was decided by a bench of five Justices, Presiding Justice Beck dissenting. Though the case was different, the majority decision recognized the doctrine of the *Odom* case. Upon formal review, in so far as any of the decisions above enumerated conflict with the ruling above announced in this case, they are to that extent overruled.

It may be added that the argument that the interest of the wife in specific property awarded to her by the jury in the final verdict granting a total divorce cannot extend to the fee, because alimony is only an allowance for support of the wife while living separate from the husband, is opposed to decisions of this court relating to the matter of the grant of a year's support out of the estate of the deceased person to the widow and minor children. The statutes

are not identical, but are quite similar. It is declared in the Civil Code (1910), § 4041, "Among the necessary expenses of administration, and to be preferred before all other debts, except as otherwise specially provided, is the provision for the support of the family," to be ascertained in a particular manner. It is made the duty of the appraisers, or a majority of them, "to set apart and assign to such widow and children, or children only, either in property or money, a sufficiency from the estate for their support and maintenance for the space of twelve months from the date of administration, in case there be administration on the estate, to be estimated according to the circumstances and standing of the family previously to the death of the testator or intestate, and keeping in view also the solvency of the estate." Provision is also made for the appraisers to make their return to the court and for publication of citation, and if no protest is filed, or if filed shall not be sustained, the report shall be recorded on a book to be kept for such purpose. Referring to property set apart in the manner indicated, it is declared in the Civil Code (1910), § 4044, "The property so set apart by the appraisers shall vest in the widow and child, or children; and if no widow, in such children, share and share alike; and the same shall not be administered as the estate of the deceased husband or father." In *Miller* v. *Miller,* 105 *Ga.* 305 (3) (31 S. E. 186), it was held: "The title to a year's support, set aside to a widow and her minor children, vests absolutely in the widow and children. Upon the marriage of one of the minors before the payment of such support by the administrator, no portion of the support should, on that account, pass back into the estate of the decedent for distribution among heirs and creditors." In the course of the opinion it was said: "If it be set apart for them jointly, they own it in common. If set aside separately, a certain amount to each, what is set aside to the widow vests in her and what is set aside to the child vests in the child. . . If a portion of the year's support was set apart to the child separately, the title vested in the child, and the property does not revert to the estate of the father in the event of the child's marriage or death." The principle announced above was followed in *Miller* v. *Ennis,* 107 *Ga.* 633 (34 S. E. 302), where it was said. "The support contemplated by section 2571 [Civil Code 1910, § 4041] of the code is that of the widow and minor children for twelve

months. But if the allowance be set apart, not severally to each member, but to the family as a whole, and all of it is not consumed, we think the residue, whether in money or in property, stands over to be used afterwards by the widow and such of the children as continue minors, until there is no longer either widow or minor in the family." See also *Ragan* v. *Shiver,* 130 *Ga.* 474 (61 S. E. 1); *Reese* v. *Reese,* 146 *Ga.* 684 (92 S. E. 218).

4. The ruling announced in the fourth headnote applied to the application of the defendant to modify the decree as rendered by the court. The application was predicated on the theory that the plaintiff occupied the position of a mere life-tenant, and that the defendant as remainderman was entitled to security for forthcoming of the property at the termination of the life-estate. Under application of the ruling announced in the second division, the estate of the plaintiff in the property awarded as permanent alimony was absolute, and not limited to an estate for life. It was the duty of the court in rendering the decree to make such provisions as would carry the verdict into effect (*Gilbert* v. *Gilbert,* 151 *Ga.* 520, 107 S. E. 490), and the court on the basis of the verdict that was rendered could not impose such restrictions upon the use of the property as was proposed in the application to modify the decree.

In the case brought by the bill of exceptions sued out by the defendant, the judgment of the trial court is affirmed; and in the case brought by the bill of exceptions sued out by the plaintiff, the judgment of the trial court is reversed, because the judge, in entering the decree upon a verdict awarding specific property as permanent alimony, restricted the right of the plaintiff to income derived from the property, and required the fees of the attorneys for the wife to be paid out of the specific property awarded as permanent alimony.

*Judgment reversed in No.* 3397, *and affirmed in No.* 3418. *All the Justices concur.*

HILL, J., concurs specially as to the ruling in the second headnote.