## PATTERSON *et al. v.* SWIFT & COMPANY.

1. There is evidence to authorize the verdict.
2. This was a claim case arising out of the levy of an execution based upon a debt contracted for fertilizer which was used upon land set apart as a year's support to the claimant and her minor children; and the court properly submitted to the jury as the controlling question whether the claimant bought the fertilizer in question for her own benefit or the benefit of her minor children, to be used in her support or the support of her minor children.
3. The court did not err, as the plaintiff in error insists, in failing to charge the jury as follows: "If you should find from the evidence in this case that at the time of the execution of the note and deed sued on the widow had remarried, and none of the minor beneficiaries were receiving or received any benefit or support from the consideration of the said note and deed, and were not living on said property, the interest that could be subjected was only the undivided one-fourth interest

Executors and Administrators, 24 C. J. p. 256, n. 9 New; p. 273, n. 11 New.

of the widow in the land levied upon." It would have been error, under the evidence, to give such charge, especially without qualification as to knowledge on the part of the plaintiff in execution of the fact that none of the minor children received the benefit or support from the consideration of the note, the foundation of the judgment upon which the fi. fa. issued, or that they were not living on the property included in the year's support.

No. 5403. November 25, 1926.

Claim. Before Judge Strange. Jenkins superior court. March 30, 1926.

This case arose by the levy of a fi. fa. issued from the city court of Millen, on May 21, 1924, in favor of Swift & Company against Mrs. Bertha E. Patterson, on a tract of land to which Mrs. Patterson filed a claim in behalf of herself and minor children, claiming title to said lands and making the contention that the lands were not subject to the execution on the ground that the lands levied on were set aside as a year's support to her and her minor children out of the estate of her deceased former husband; and that the debt on which the fi. fa. is based was not created for the benefit or support of either. The claimant testified, in brief, as follows:

My first husband's name was Charles Newton. He is dead. He has been dead for fourteen years. I had five children by my first husband. They were John Tom Newton, Claude Newton, Annie Newton, Charles Newton, and Winnie Newton. The land levied on by Swift & Company was set aside to me and my minor children as a year's support. That is the property referred to in the affidavit. The court of ordinary set aside this property for a year's support. At the time this year's support was set aside all of these children whose names I have called were minors. Two of them are now dead, Annie and Claude. At the time the deed to Swift & Company was made, three of these minor children were living. This guano was sold to my husband. This guano was bought for my husband's use to run a farm. My first husband, Charles J. Newton, is dead. My present husband is Mr. Patterson. I married him about eleven years ago, about three years after my first husband died. He and I were living on this year's support property. My husband ran the farm on this year's support property. I did not have anything to do with running that farm. This guano was not purchased for my support. My husband has been supporting me since my marriage to him. My husband was supporting me at

the time this guano was purchased, and has been supporting me ever since. This guano was not purchased for my support or use. It was not bought for the children's use; it was bought for his use, as he was farming. There were two tracts of land set apart for the year's support. A little of the guano purchased was used on this tract levied on. The bulk of it was used on the other tract. Neither of these three minor children living got any benefit from this guano. These three children were not living at home with us. Winnie Newton was with John D. Newton, John Tom was living with Carl Newton, and Charles was living with Lewis Newton. This guano did not go to the support or maintenance of either of these children. These children got no benefit from this guano. I did not have a thing to do with the running of that crop. I signed this note and deed over on this place, out on a wagon-body. Mr. Parker was the agent for the fertilizer company. I don't know whether he knew or not that this fertilizer was not for the benefit of these children. There was nothing said about it; he asked me to sign this paper, and I signed it. I did not know then what it was for. I asked later what it was for. I did not know at that time what I signed it for. My husband told me to sign it. He said, "Mama, sign this paper for us." I did not read it over. Mr. Parker, after the sheriff came down there, had a talk with my husband about it. The children got no benefit from this guano. My husband supported me. I am filing this claim in behalf of myself and minor children. I stated that there were two tracts of land set aside as a year's support. Only one tract is levied on. Both of these tracts are part of the year's support. Some of this fertilizer was used on the tract levied on, and the balance was used on the other tract, but all of it was used on land that was set aside as a year's support. Ever since Mr. Patterson and I have been married we have been living on this land. Mr. Patterson has been supporting me since the date of my marriage. I guess the only means of support Mr. Patterson has had is what he derived from working this land. I suppose the only support I have had since Mr. Patterson and I were married came from the product of these lands. Mr. Patterson owned other property at the time of my marriage to him. He owned other land. That land was down in Candler County. He does not still own it; he sold it. The only land that we had after that was my land, this year's support; and he and I

lived on that land. He ran these tracts of land as he saw fit. I turned them over to him to run. I guess he operated it in much the same way as my former husband did. I guess I got my support from it. Whatever income came from the farm he and I shared it together. The reason these children left this farm was because they became dissatisfied. I guess, had they stayed, I would have done the best that I could have done for them under the circumstances. I have lived on these lands twenty-four or twenty-five years. It is true that ever since I have lived on these lands and farmed them I have used commercial fertilizer in farming operations. It is of course necessary to fertilize lands. It is true that these lands could not have made a support for me without the use of commercial fertilizer, but had I run the farm I might have worked around a way to pay it. My husband was managing the farm with his own consent. I did not give him any authority to buy this fertilizer. I turned the land over to him to manage for himself and to make a support. I did get my support out of it. He was recognized as head of the family. He never did and could not claim title to the land. I owned the land and worked on the farm as well as he did. This year's support also, besides these two tracts of land, consisted of some plain household furniture. There were a few other little things besides that in the year's support, but there was no special income of any kind by which I could run along except income from this farm. At the time I married Mr. Patterson he had been married before. He had nine children. All of his own children were living on this farm at the time I made this note and deed. My husband had some land in Candler County. He sold that three or four years after our marriage, five or six years ago. I do not know what he did with the money he got from the sale of that land in Candler County. I do not know whether he used it to support me or not. One thing I do know is, that I and my children did not get any benefit out of this money. I did not run any crop; my husband ran the crop. My minor children now own this other tract of land. Most of the fertilizer was used on this tract. Of course fertilizer is necessary in farming operations. Whatever value this fertilizer was to the land the children did not get the benefit of it. The land is still there. If the value of the land enhanced in value by the use of the fertilizer, the children had an interest in it and got the benefit of it."

T. C. Lanier, sworn for the claimant, testified that he was the father of Mrs. Patterson; that her children by the first husband were driven off by Patterson, the second husband; that after his daughter married Patterson the latter supported the minor children "very little;" that his wife supported him; and that the children did not get any benefit from the farm at all.

The jury returned a verdict finding the land subject. The claimant made a motion for a new trial, which was denied, and she excepted.

*H. A. Boykin* and *William Woodrum,* for plaintiffs in error.

*Leroy Cowart,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. We are of the opinion that the verdict was authorized by the evidence in the case. The property embraced in the year's support which had been duly set aside to Mrs. Patterson and her minor children was taken from the estate of Mrs. Patterson's first husband, Newton. It was set aside for the support of herself and her minor children. After her second marriage she continued to live on the land, and was living there and being supported from the crops grown on the land when the debt upon which the fi. fa. levied upon these lands was created. The debts were evidenced by a note secured by a deed given for that purpose under the provisions of the statute. In the note it was recited that it was given for fertilizer. The fertilizer, as it appears, was all used upon lands included in the year's support. A part of it was used on the portion of the land covered by the levy of the fi. fa., and a part used on another tract of land. Both tracts had been set apart as a year's support. The jury were authorized to find that the fertilizer was sold by the plaintiff in fi. fa. to Mrs. Patterson in good faith. She had been buying fertilizer and using it upon these lands for many years. If the children had left the premises, and this was a material fact, it was not disclosed that the plaintiff knew of that fact. The fact that Mrs. Patterson had married the second time did not deprive her of the right to sell and convey the land for the purpose of deriving from the proceeds a support for herself and minor children. *Swain v. Stewart,* 98 *Ga.* 366 (25 S. E. 831). In the case of *Ragan* v. *Shiver,* 130 *Ga.* 474 (61 S. E. 1), it was held that where the lands of a decedent are duly set apart as a year's support to a widow and minor children jointly, the

widow is entitled to use it for the joint support of herself and children and for her own support as long as she lives, and she has the right to sell the entire fee. It was further said in that case: "There being no averment to the contrary, it will be presumed that the widow's conveyance was to raise funds for the support of herself, or of herself and children." "The validity of a sale of the land by the widow for the purpose of providing for her support is not dependent upon necessity to sell." *Reese* v. *Reese,* 146 *Ga.* 684 (92 S. E. 218).

2. Error is assigned upon the following charge of the court: "The only question for you to pass upon in this case is, did Mrs. Patterson buy the guano sold in this case for her own benefit or for the benefit of the minor children, to be used by herself or her present husband for her support or the support of her minor children. If you should find that the property was sold or deeded for this purpose, it would be your duty to find the property subject to this execution; if you should find the property was not sold for this purpose, then of course, if she did not derive any benefit from it, she or her minor children, and that that was not the purpose of the conveyance, then your verdict would be for the claimant, Mrs. Patterson." Movant insists that this charge was error, because the court instructed the jury in effect that if the guano was sold for the benefit of either Mrs. Patterson or her minor children, the plaintiff would be entitled to recover; movant insisting that, "when property is set aside for a year's support to the widow and minor children, the use of the entire property is a joint one; that out of the property so set apart both the widow and all of the minor children are to be supported, and neither the widow nor the children are to be supported to the exclusion of the other." The charge is not error for the reason assigned. It is true that when property is set aside as a year's support it vests in the widow and minor children, and the use of the entire property is a joint one, and out of it both the widow and the minor children are to be supported. *Bank of Cuthbert* v. *Taylor,* 158 *Ga.* 237 (123 S. E. 262). In the case just supposed the widow and minor children owned the property in common. *Miller* v. *Miller,* 105 *Ga.* 305 (31 S. E. 186). But where the children left the premises and the widow remained thereon and incurred a debt for fertilizer essential to make the land set apart productive, the vendor of the fertilizer

could enforce his claim for the debt against the land. If the children had left the premises and gone to some other place, they still had a claim for support out of the products of the farm, the fertility of which had been increased by the fertilizer upon it. Whether or not the vendor of fertilizer to be used upon a farm set apart as a year's support for the widow and minor children could enforce his claim for the fertilizer used upon the farm, where he knew that the widow had compelled the children to leave the place and that she would refuse to allow them to participate in the products of the farm, is a question not before us for decision. But we do not think that where the year's support is set apart to a widow and minor children, the vendor of fertilizer used to increase the fertility of the farm is bound to inquire whether or not the children are still remaining upon the land, or whether there would be a proper division of the products of the farm between the widow and the children. The widow in this case had been using fertilizer for many years upon this same land; whether bought from the same vendors, defendants in error, the record does not disclose. If the children in this case were deprived of participation in the proceeds of the year's support, that fact might be made the basis of a suit to compel a proper allowance out of the crops grown on the lands forming the year's support set apart. Besides, in her claim it is averred that the fertilizer in question, which is the consideration of the debt upon which the execution levied was based, "has not been used for the support, maintenance, benefit, or education of said minor children of this defendant." Further, that Swift & Company had knowledge, at the time she contracted the debt for the fertilizer, that it was not contracted for the purpose of support, maintenance, or for the benefit of the defendant and said minor children. As pointed out above, the recital of the claimant is that the fertilizer was to be used upon the land set apart; and as a matter of fact it was used upon those lands, and the widow was living upon them with her second husband, though the children were not then residing there. We think the charge was authorized. And if it were not strictly accurate, we are of the opinion that it should not cause a reversal in this case, as the evidence demanded the finding of the property subject. It follows from what we have just said that the other charge complained of was not error.

3. The third headnote needs no elaboration.

*Judgment affirmed. All the Justices concur.*