In re E. Gerald **NIX**, Debtor.

E. Gerald **NIX**, Plaintiff,

v.

Euzelia **NIX**, Defendant.

Bankruptcy No. G90–21690–REB.
Adv. No. 93–2038.

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

Oct. 18, 1994.

Harmon T. Smith, Jr., Gainesville, GA, for plaintiff.

John E. Kardos, Kardos, Warnes & McElwee, Athens, GA, for defendant.

## ORDER

ROBERT E. BRIZENDINE, Bankruptcy Judge.

This adversary proceeding is before the Court on cross-motions for summary judgment. In his complaint, Plaintiff–Debtor seeks a determination that a jury award of $500,000 to Defendant arising out of the parties' divorce is dischargeable because it constitutes a property settlement. Defendant counters that the obligation is in the nature of alimony, maintenance, or support and thus is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). After reviewing the record and evidence presented, and after considering the argument presented in the briefs, the Court concludes that Defendant's motion should be granted and Plaintiff–Debtor's motion should be denied.

The following material facts are not in dispute. The parties were divorced in 1985 and on February 3, 1987, the Superior Court of Hall County, Georgia entered a Final Judgment and Decree which incorporated a verdict returned on January 15, 1987 after a jury trial. By virtue of this Decree, Defendant was awarded child support of $600 per week, certain real and personal property, and a lump sum cash award in the amount of $500,000. Four children were born to the parties during their marriage and Defendant was awarded custody of the three minor children by previous agreement.

The property awarded to Defendant, which was separately listed in the verdict under "Equitable Division of Property," consisted of the marital residence and furnishings with the mortgage balance to be assumed by Defendant, three lake lots and dock with a mortgage to be paid by Plaintiff, a Cadillac and a pickup truck, and one half of a pension plan and Keogh Plan. No other property was awarded to her in this part of the verdict. The Decree also incorporated a brief colloquy between the court and the jury foreman which clarified that any property not specifically identified in the verdict was awarded to the party in whose name it was titled. *See* Decree of February 3, 1987, ¶ 9, attached as Exhibit "D" to Plaintiff's motion.

The lump sum cash award was set forth in the verdict under the heading "Alimony" and stated that "[w]e the jury find that the plaintiff [Defendant herein] *is* entitled to alimony as follows: [the following being inserted by hand] $500,000.00 cash award to be paid $100,000 per year for five years or with option to pay-off in full." *See* Verdict of January 15, 1987, attached as Exhibit "C" to Plaintiff's motion. No other payment terms were provided. This award constituted the only provision specifically designated as alimony in the verdict.

In paragraph 7 of the Decree, the trial judge interpreted the jury's award "to be a lump sum award payable in periodic installments, at Defendant's [Plaintiff herein] option." *See* Decree at 9, attached as Exhibit "D" to Plaintiff's motion. Further, the court ordered that if Plaintiff elected to pay the award at the rate of $100,000 per year, "the first payment of $100,000 shall be made ... not later than the 15th day of January, 1988 and a like amount shall be paid ... not later than said date of each succeeding year" for the next four years until the amount awarded was fully paid. *Id.* In paragraph 8, the trial judge ordered that the right of Defendant herein to recover these payments "shall not be affected by the death or remarriage of either party" and any unpaid balance existing at the time of Plaintiff's death would be a charge against his estate. *Id.* at 10. Shortly thereafter, Plaintiff elected to pay the award on a periodic annual basis.

Defendant subsequently filed a motion for temporary relief on March 3, 1987 seeking temporary alimony and attorney's fees during the pendency of a motion for a new trial which had been filed by Plaintiff. The court granted Defendant's motion and ordered Plaintiff to pay child support and all necessary medical expenses of the minor children. In addition, Defendant was awarded $1,500 per month for her support pending further order of the court. The superior court also ordered, by means of a handwritten notation apparently initialed by the judge, that any amounts so paid were "to be set-off against the lump sum alimony awarded in the final judgment." Order of March 13, 1987, ¶ 3, attached as Exhibit "G" to Plaintiff's motion. Defendant received five such payments from Plaintiff in 1987 in the total amount of $7,500. In addition, Plaintiff paid $292,500 toward the award on an annual basis through 1990, leaving the sum of $200,000 as unpaid and in arrears. He filed a petition under Chapter 11 on December 28, 1990 and this case was converted to a case under Chapter 7 on June 7, 1993.

During their marriage of 24 years, Plaintiff and Defendant reared four children and maintained a comfortable standard of living while acquiring substantial marital property. At the time of the entry of the jury verdict, Plaintiff maintained a successful professional practice as an orthodontist earning in excess of $225,000. Although she later earned her masters degree in childhood education, during the marriage Defendant was a homemaker and primary caretaker for the children. At the time of the trial, she had been out of the public job market for 19 years. Plaintiff disputes Defendant's claim that a large disparity in earning ability existed between them; however, Plaintiff acknowledges that at the time of the trial, Defendant was not qualified to earn as much income as he and needed additional training over time to improve her earning potential.

At the time of the divorce, Plaintiff's net worth exceeded $2 million. He was allowed to retain property which included a 340 acre farm, an automobile dealership, and certain secured real estate notes. He asserts that the combined value of the marital home and lake front property awarded to Defendant was $700,000, but she contests this allegation, primarily, because she was required to assume the mortgage on the marital residence.

Defendant argues that at the time of the jury verdict, she was virtually unemployed and needed substantial support. Without the $500,000 award, she contends, she would have been forced to liquidate some of the property awarded to her by equitable division in order to meet normal living expenses, pay the mortgage on the family home, and continue her education in hopes of becoming financially self-sufficient. Plaintiff challenges Defendant's claim that she was not self-supporting at the time of the divorce and incapable of meeting her bills without an award of support. He argues that based on certain gifts of stocks and bonds, coupled with the one-half interest in the pension fund ($93,664.50), child support, and the lake front property she had been awarded, Defendant had ample means of support without the $500,000 award.

Under Section 523(a)(5), the burden of proof is on Defendant to establish that the lump sum award of $500,000, $200,000 of which remains unpaid, is "actually in the nature of alimony, maintenance, or support" as distinguished from a property settlement, and thus nondischargeable. *See Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 905 (11th Cir.1985); *Edwards v. Edwards (In re Edwards)*, 31 B.R. 113 (Bankr.N.D.Ga.1983); *see also Youngman v. Youngman (In re Youngman)*, 122 B.R. 612, 614 (Bankr. N.D.Ga.1991). Although the validity and enforceability of a claim is determined by reference to state law, federal law governs with respect to the characterization of an obligation as support and thus, whether it is dischargeable in bankruptcy. In this case, issues regarding alimony and property division were submitted to a jury to which the state trial judge was required to conform his final judgment. Accordingly, this Court's inquiry is directed to ascertaining the substance of the obligation and the jury's intent

in regard thereto. *See Long v. West (In re Long )*, 794 F.2d 928, 931 (4th Cir.1986).[1]

■ Defendant asserts that several factors indicate that the award was intended to function as support. For instance, as clearly shown on the face of the verdict form, the jury decided that, in addition to an equitable division of specifically identified property, Defendant was also entitled to an award of alimony to be provided in the form of a $500,000 cash award. Further, she argues that the award was intended as support given the disparity in the parties' relative financial status as demonstrated by the differences in their earning ability, prior work experience, business opportunities, level of education, benefits she would have received had the marriage continued, probable future need, and existence of other means of support or financial resources.

■ Although it is not conclusive, the jury's deliberate designation of the award as alimony in a distinct category in its verdict, as distinguished from its prior, separate equitable division of property, does provide relevant insight into the purpose of the award. *See Long, supra,* 794 F.2d at 931; *Myers v. Myers (In re Myers )*, 61 B.R. 891, 894 (Bankr.N.D.Ga.1986); *see also Youngman, supra,* 122 B.R. at 614–15; *accord Harrell, supra,* 754 F.2d at 906. Further, the factors as asserted by Defendant tend to support the conclusion that the substance and function of the award was to provide for her support needs. *See generally Davidson v. Davidson (In re Davidson )*, 104 B.R. 788, 794–95 (Bankr.N.D.Tex.1989), *aff'd,* 133 B.R. 795 (N.D.Tex.1990), *rev'd on other grounds,* 947 F.2d 1294 (5th Cir.1991); *see also Montgomery v. Montgomery (In re Montgomery )*, 169 B.R. 442, 444 (Bankr.M.D.Fla.1994).

The jury's decision to grant Defendant a substantial lump sum alimony award appears to have been made in recognition of her actual need for support. A vast difference existed between the parties in terms their respective economic positions resulting from Defendant's full-time occupation in working at home and caring for the children while Plaintiff built a financially successful orthodontics practice. Although Defendant was well-educated and had the potential for earning a good income in the future, she had been unemployed outside the home for nearly twenty years. Further, she was at a distinct disadvantage relative to her husband in terms of business opportunities.

Thus, although she had a reasonable expectation of eventual gainful employment, she needed time for additional education and training to enhance the marketability of her job skills before she could become self-supporting and financially independent. Meanwhile, she faced immediate needs such as the mortgage on the family home and other expenses which had to be paid. Accordingly, it is reasonable to conclude that the jury determined that Defendant was dependent upon an award of support to assist and enable her to satisfy her daily needs for a limited period of time until she could update her skills and become rehabilitated in order to enter the public job market. *See Myers, supra,* 61 B.R. at 895; *see also Forsdick v. Turgeon,* 812 F.2d 801 (2d Cir.1987); *Montgomery, supra,* 169 B.R. at 444.

■ Plaintiff asserts, however, that the jury award is in the nature of a property settlement or equalization of property rights for several reasons. First, he argues, the award could not have been intended as support because it was not payable until one year after the entry of the decree and then only on an annual, as opposed to a monthly, basis. The failure to provide for immediate periodic payments is contradictory to a finding that the jury intended to provide support. Further, he contends that the award is not reflective of need and was not adjusted to Defendant's expenses, but instead was fixed in an arbitrary amount of $100,000 per year. *See* O.C.G.A. § 19–6–1(c) (alimony is award-

---

1. Because the Court must focus upon the jury's verdict, evidence in the form of depositions regarding the parties' interpretation of the award is not conclusive. Further, the Court may not consider subsequent developments between the parties in this inquiry. Similarly, the manner in which the parties may have treated any payments under the award for income tax purposes is not necessarily probative in ascertaining the substance of the award and the function that the jury intended it to serve. Moreover, this Court cannot allow the parties to disturb the jury's decision by attempting to retry previously decided factual matters in this forum.

ed in accordance with a party's needs). Next, Plaintiff contends, because the award did not cease upon death or remarriage, it is inconsistent with an award of alimony and support. Finally, given the amount of assets the jury allowed Plaintiff to retain, the award was necessary, he argues, to accommodate a more equal division of property between the parties, notwithstanding the listing of the award under the heading of alimony.

After entry of the Decree, Plaintiff elected to pay the lump sum obligation in installments with the first payment due one year from the date of the verdict. Thereafter, Defendant filed a motion for temporary relief because the allegedly arbitrary decision in the final decree as drafted by the trial judge, not the jury, left her virtually without any means of support. Moreover, she argues, the Decree would have necessitated that she liquidate certain property just to meet living expenses. Such a result, she asserts, is inconsistent with the jury's intent because it would not have awarded her such property, including the marital home, intending that she would then have to sell it to pay her bills.

Defendant further contends that the trial judge understood this situation when he granted her motion for relief and ordered that the $1,500 monthly payments should be applied against the original $500,000 obligation. His ruling, she argues, serves as further evidence that the jury had intended its award to function as support. Plaintiff asserts on the contrary that the order shows a recognition on the part of the state court judge that no support had been provided for Defendant in the Final Decree. Further, he claims that this award for monthly payments was solely for reimbursement of Defendant's attorney's fees in contesting his motion for a new trial.

Under Georgia divorce law, a trial judge in the entry of the final judgment and decree is required to give full effect to the disposition of property as set forth in the jury's verdict. *See* O.C.G.A. § 19–5–13. To the extent the trial judge in this case added to or changed the form of the award, this Court must be careful to accord deference to the intent of the jury as originally set forth in its verdict.

The jury did not set up the payment schedule, the trial judge did and thus, this factor is of limited relevance. Similarly, subsequent modifications must also be examined in the light of the jury's decision which is controlling for purposes of this Court's inquiry.

Plaintiff's arguments concerning the lump sum nature and method or terms of payment of the award, the determination of its amount, and whether or not it was modifiable or subject to certain contingencies relate to the award's structure. Although the absence or presence of certain traditional hallmarks of alimony or property settlement is undoubtedly important in evaluating the substance of an award, such an analysis, as in this case, may prove inconclusive upon closer review. As previously noted, state law is not determinative herein, but it is nonetheless significant because it furnished the contours within which the jury was instructed to fashion its award. Thus, this Court must be mindful of state law in construing the purpose of the award as set forth in the jury's verdict.

■ For instance, Plaintiff contends that the award's immunity from death or remarriage is an indicia of a division of property rather than alimony because the latter, by definition, ceases upon occurrence of such an event. *See* O.C.G.A. § 19–6–5(b). While generally true, this argument fails to account fully for the role of lump sum alimony as distinguished from periodic alimony in Georgia divorce law. *See* O.C.G.A. § 19–6–5(a). Moreover, this was the interpretation of the trial judge. The verdict itself did not address such contingencies.

■ In Georgia, property disposition in connection with a divorce may occur via such remedies as property settlement, property division, alimony, or equitable division. The scope of an alimony award is potentially greater than any other type of property allocation. *See* O.C.G.A. § 19–6–5(a); *see also Pickle v. Pickle,* 238 Ga. 66, 231 S.E.2d 61 (1976); *Anthony v. Anthony,* 237 Ga. 753, 229 S.E.2d 609 (1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977).[2]

**2.** In *Stokes v. Stokes,* 246 Ga. 765, 273 S.E.2d     169 (1980), the Georgia Supreme Court deter-

For instance and as is frequently the case, an alimony award may be structured in the form of a personal obligation derived from future earnings. Additionally, with its broad statutory powers, a jury may even decide for purposes of support to invade the corpus of the estate of one spouse and vest absolute title to certain property in the other. *See* O.C.G.A. § 19–6–5(a); *see also Wise v. Wise,* 156 Ga. 459, 119 S.E. 410 (1923). Alimony awards can, therefore, be structured as periodic payments, payment in kind, or lump sum in the form of either money or property.[3]

■ Because alimony may be awarded from particular property and because such awards are immune from modification (O.C.G.A. § 19–6–21), as compared with periodic alimony, lump sum alimony developed as an equitable means for doing complete justice.[4] A jury, through the exercise of this broad power and in its discretion, is thus able to serve fully the "prime object of the law," historically understood as making provision for the ex-wife's support, in many different types of factual situations. *Wise supra,* 156 Ga. at 475, 119 S.E. 410.

■ This virtually unlimited power allows a jury to tailor its award to meet the special circumstances as may presently exist in a case as well as provide the flexibility it perceives as necessary to give an ex-spouse the financial means and ability to respond to future needs. For example, a jury could determine that the recipient spouse should have the right to change the use to which the awarded property was to be put, as opposed to having to rely totally on a future stream of payments as a means of maintenance and support. The whole purpose of the law could fail if the ex-spouse was restricted in his or her interest in or enjoyment of the property that had been awarded. *Wise, supra,* 156 Ga. at 475, 119 S.E. 410. Similarly, a vested, lump sum award may also be appropriate when it appears that periodic alimony will be an unsatisfactory remedy due to a demonstrated litigious or uncooperative disposition of a payor spouse. *See e.g. Heflinger v. Heflinger,* 161 Ga. 867, 873, 132 S.E. 85 (1925).

■ In addition, the courts began to allow juries to consider a wife's marital contributions in her own right in determining the form of an alimony award. *See generally Davis v. Welch,* 220 Ga. 515, 140 S.E.2d 199 (1965). Further, such awards may reflect the connection between marital sacrifice and support needs as evidenced by a diminution in earning capacity caused by an absence from the public job market and corresponding loss of competitive position. *See Moon v. Moon,* 237 Ga. 635, 229 S.E.2d 440 (1976); *compare* O.C.G.A. § 19–6–5(a)(7).

Previously, Georgia statutory law was based on common law concepts regarding marriage whereby spousal roles were generally determined by gender. Upon dissolution

mined that statutory support existed regarding the equitable apportionment of certain marital property in disregard of title restraints.

3. Lump sum alimony has been defined as an award of specifically identified real or personal property, or a stated amount of money, which may or may not be designated as to its source, that is payable at once or in specified periodic installments. *Rooks v. Rooks,* 252 Ga. 11, 14–15, 311 S.E.2d 169 (1984) (Weltner, J., concurring). This analysis has been further refined in that the transfer of a marital residence until death or remarriage constitutes a completed and vested allocation which is not subject to subsequent modification as compared to periodic alimony. *See McLendon v. McLendon,* 262 Ga. 657, 424 S.E.2d 283 (1993); *Estlund v. Estlund,* 260 Ga. 225, 391 S.E.2d 763 (1990); *Lyons v. Lyons,* 244 Ga. 619, 261 S.E.2d 395 (1979). Lump sum alimony differs from periodic permanent alimony which is a terminable allocation that is paid at stated intervals for either an indefinite period or until death or remarriage. *See Estlund, supra,* 260 Ga. at 226, 391 S.E.2d 763 (Weltner, J., concurring), quoting *Spivey v. McClellan,* 259 Ga. 181, 182, 378 S.E.2d 123 (1989).

4. A similar development occurred in property settlement/division decisions such as *Gorman v. Gorman,* 239 Ga. 312, 236 S.E.2d 652 (1977). In *Gorman,* it was held, in a line of cases which roughly paralleled the development of lump sum alimony by expanding the partitioning of property beyond strict title concepts, that courts have the power to equitably divide property when requested "to avoid further litigation and to do complete justice." 239 Ga. at 314, 236 S.E.2d 652. The underlying rationale inherent in such decisions, and as evidenced in lump sum alimony cases, appears to have merged in a conceptual sense when equitable division was recognized in 1980. *See Stokes v. Stokes, supra,* 246 Ga. 765, 273 S.E.2d 169.

of a marriage, property was viewed as belonging to the payor which usually was the husband. Similarly, the principal focus in awarding alimony from the husband's estate was his continuing duty to provide support for his wife. Compensation based on contributions or sacrifices by the wife was not recognized. As such, alimony was subject to modification based on changes in need or a husband's ability to pay and typically terminated upon death or remarriage. Further, because it was assumed that alimony arises out of the husband's marital duty to support his wife, marital conduct was considered relevant. Thus, alimony awards also served (and continue to serve) as a means for imposing moral judgment in relation to the perceived cause for the dissolution of the marriage. Accordingly, alimony awards could never exceed actual need or ability to pay and were subject to various constraints such as marital fault.

■■■■ Lump sum alimony as it developed in the law can be understood, among other things, as recognition of a pre-existing property entitlement, subject to the discretion of a jury, based upon equitable considerations such as noneconomic marital contributions. Through its broad reach as a form of alimony, such an award was distinguishable from traditional property settlement which customarily relied upon title/ownership or trust law-based rights, though as noted above, these rules have been relaxed over time. Nonetheless, because such lump sum awards could not be modified like periodic alimony (O.C.G.A. § 19–6–21) or terminated upon remarriage, lump sum alimony came to resemble a type of earned property right. *See e.g. Newell v. Newell,* 237 Ga. 708, 229 S.E.2d 449 (1976); *Herbert v. Huggins,* 231 Ga. 489, 202 S.E.2d 443 (1973).[5] Moreover, some awards incident to divorce intended as alimony, may have been characterized as either lump sum alimony or property settlement to ameliorate the harshness of standard alimony restrictions.[6]

■■■■ The statutory definition of alimony has also undergone significant change. In 1981, Georgia's alimony statute was amended to include consideration of, among other things, domestic contributions. *See* O.C.G.A. § 19–6–5(a)(6). Accordingly, it is no longer limited to a strict evaluation of support needs, although it remains subject to modification or termination in its periodic form, and subject to fault in any form. Through its recognition of various property interests, it may also encompass an equalizing role in the disposition of property. *See e.g.* O.C.G.A. §§ 19–6–1(c); 19–6–5(a)(2) (duration of marriage). Moreover, the concept of maintenance and support for a fixed, rehabilitative period during which the recipient may become self-supporting has also been incorporated into alimony. *See* O.C.G.A. § 19–6–5(a)(5); *compare Moon, supra,* 237 Ga. 635, 229 S.E.2d 440 (relevance of duration of a marriage and need for rehabilitation).

**5.** Because alimony is so closely aligned with need and ability to pay, periodic payment alimony awards may be modified as a result of a change in need or a party's financial circumstances. Such modification, however, is expressly unavailable in connection with fixed lump sum awards whether they be lump sum alimony or property division, or property settlement. *See* O.C.G.A. §§ 19–6–19; 19–6–21; *see also Hughes v. Hughes,* 169 Ga.App. 850, 314 S.E.2d 920 (1984); *Lyons v. Lyons, supra,* 244 Ga. at 620, 261 S.E.2d 395. Further, although alimony generally terminates upon death or remarriage (O.C.G.A. § 19–6–5(b)), an award of lump sum alimony does not. *Newell v. Newell, supra,* 237 Ga. 708, 229 S.E.2d 449; *Bennett v. Bennett,* 236 Ga. 764, 225 S.E.2d 264 (1976). As noted above, however, cases such as *Wise v. Wise, supra,* indicate that a jury's decision to award an absolute estate may similarly be motivated by its perceptions as to the best means for addressing particular support needs.

**6.** As a result, such awards are often difficult to distinguish. *See e.g. Coleman v. Coleman,* 240 Ga. 417, 424–25, 240 S.E.2d 870 (1977) (Hill, J., dissenting); *Newell, supra,* 237 Ga. 708, 229 S.E.2d 449; *Herbert v. Huggins, supra,* 231 Ga. 489, 202 S.E.2d 443; *see also Manuel v. Manuel,* 239 Ga. 685, 238 S.E.2d 328 (1977) (obligation labelled as property settlement could nonetheless be for support and maintenance).

Unlike property settlement, alimony, including lump sum alimony, is subject to certain significant limitations based on marital fault, such as adultery or desertion. *See e.g.* O.C.G.A. § 19–6–1(b); *see also* O.C.G.A. § 19–6–19(b) (post-marital fault); *cf. Yarbray v. Young,* 236 Ga. 784, 225 S.E.2d 315 (1976) (property division upheld notwithstanding denial of alimony and absence of evidence as to title); *McLane v. McLane,* 224 Ga. 748, 164 S.E.2d 821 (1968).

■ These changes have tended to homogenize the considerations relevant in disposing of marital property. In fact, both equitable division and alimony awards may result from a consideration of the same factors. Such factors include need and ability to pay and compensation for noneconomic marital contributions or marital sacrifices. *See* O.C.G.A. § 19–6–5(a); *Stokes*, supra, 246 Ga. 765, 771–73, 273 S.E.2d 169 (Hill, J., concurring); *Rooks, supra,* 252 Ga. at 18, 311 S.E.2d 169; *accord Holler v. Holler,* 257 Ga. 27–28, 354 S.E.2d 140 (1987).

■ In sum, a discrete lump sum installment award by a jury can reasonably be interpreted as a recognition of pre-existing property rights based on equitable considerations, the satisfaction of a marital support obligation, which may include rehabilitation, or both. Although they retain important differences, as alimony, property settlement, and equitable division converge in terms of their overall objective under Georgia law, they are becoming somewhat interchangeable as the means by which juries can allocate property between ex-spouses incident to a divorce. Consequently, reference to an obligation's structure, in terms of modifiability, terminability, or payment method, can no longer be considered a consistently reliable method for ascertaining an award's definitive purpose.[7]

■ Many of the factors used in crafting alimony or equitable division awards are also employed by bankruptcy courts in determining the substance of an obligation and whether it is in the nature of maintenance or support for purposes of Section 523(a)(5). *See e.g. Montgomery, supra,* 169 B.R. at 444;

*Davidson, supra,* 104 B.R. at 794. For example, in this case, the disparity in the parties' incomes and financial resources, relative work skills, and educational levels at the time of the trial all tend to show that the purpose of the award was to provide support. Likewise, the disadvantage Defendant endured in terms of her 19 year absence from the public job market indicates that the award was intended to assist in her rehabilitation. *Accord Forsdick, supra,* 812 F.2d at 803.

Plaintiff has further argued that the lump sum award was made to equalize the otherwise disparate division of property which had resulted based on who held title. Defendant disputes this contention arguing that even without the $500,000 cash award, the jury had already made a substantial and specific award of property in order to equalize the division of property between them. First, the Court notes that the jury did not include the $500,000 in its equitable division award to Defendant. It specifically designated it as a separate and distinct award which it characterized as alimony. Secondly, although the award may have been intended to compensate Defendant while accommodating her aversion to running a business or farm, which was instead awarded to Plaintiff, such an award is not inconsistent with an overall purpose of providing support.

■ Given the complexity of Georgia law and the developing similarities and confusion among the remedies available for juries to resolve divorce matters, in this Court's opinion, the wisdom of the jury is reflected by its verdict, which is remarkable in its effect, and the overall scheme is obvious. The property awarded to Plaintiff included business assets

---

7. Georgia's alimony provision is subject to several constructions which further clouds precise analysis of an award's purpose. First, it may be construed as an indication that equitable division awards contrary to title should be folded into alimony. Alternatively, it may have been designed to accommodate Justice Hill's proposal in *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169, that allocations of property in a divorce should be coordinated. For example, equitable division of property would assume the function heretofore served by lump sum alimony. The determination of entitlement to alimony would then take into account the overall effect of an equitable division award in terms of the amount and li-

quidity of the resulting estate, and thereby become more closely reflective of actual maintenance needs. *See* O.C.G.A. § 19–6–5(a)(7); *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169 (Hill, J., concurring). To this extent, the overall structure of a verdict may be relevant.

In any event, analysis of the substance of such awards is made more complex because in making such determinations, a jury may not be reasonably expected to restrict considerations of equity or fault to the particular form of property disposition device to which it ordinarily applies. *See e.g. Peters v. Peters,* 248 Ga. 490, 283 S.E.2d 454 (1981).

which generated income but demanded substantial time and effort in terms of management and supervision unlike the assets awarded to Defendant, which generated no income and were generally illiquid. The jury, realizing that the Defendant, without some support in the form of cash from her ex-husband, would be hard-pressed to keep up with the mortgage payments on the family home, while also providing for the children and preparing to reenter the public job market by completing her post-graduate education, provided such necessary cash in the form of a lump sum award. *Accord Myers, supra,* 61 B.R. at 894.

Unlike the ex-wife in *Montgomery, supra,* the cash award in this case served as the only viable financial means for the Defendant to meet the aforementioned obligations, absent an invasion of the child support money or liquidation of the real property awarded to her. 169 B.R. at 444–45.[8] The function of the lump sum award under review was to furnish support for the Defendant and any other determination would be inconsistent with the jury's intent and design and would not give proper effect to the provisions of the verdict and their relation to each other.

Based on a review of the award in terms of the totality of the various factors as recognized in analyzing obligations under Section 523(a)(5), the Court concludes that the substance of the lump sum cash award, and purpose and intent as evidenced by the verdict, establishes that said award was designed to provide for Defendant's daily needs while assisting in her rehabilitation for a limited period of time after the divorce. Thus, the lump sum award at issue is in the nature of alimony, maintenance, or support and is, therefore, nondischargeable.

Accordingly, for the foregoing reasons, it is

**ORDERED** that Defendant's motion for summary judgment is **granted** and Plaintiff's motion for summary judgment is **denied.**

8. Although Defendant received $93,664.50 from the pension or Keogh fund within a month of the jury verdict, the potential corresponding tax liability and/or penalties lessen the likelihood that such a disbursement was being relied upon as a

The Clerk is directed to serve a copy of this Order upon counsel for Plaintiff, counsel for Defendant, and the Chapter 7 Trustee.

**IT IS SO ORDERED.**

means of providing for daily support needs. In addition, it is similarly unlikely that the jury would have intended Defendant to consume such funds, commonly used for retirement, to defray daily living expenses.