## 40304. ROOKS v. ROOKS.

PER CURIAM.

As a part of the jury verdict in a divorce proceeding, the marital home was ordered sold, and the wife was awarded one-half of the proceeds as equitable division. She also was awarded any relocation fee which the condemning authority might pay in connection with its prospective acquisition of the property by eminent domain. We granted the husband's application for discretionary appeal in order to determine whether the home was subject to equitable division.

Testimony at trial established that the home was once owned by the husband's mother. The husband and wife rented it until 1977, when the mother conveyed fee simple title to the husband in order that he might offer it as security for a loan. He borrowed approximately $25,000, and gave $4,000 of the loan proceeds to his mother. The jury awarded one-half of the home to the wife, one-fourth to the husband, and one-fourth to the mother. The trial court modified the verdict so as to award a one-half interest in the

property to each spouse.

The court charged concerning the principles of equitable division as follows:

"In this case both parties contend that there was certain property acquired during the marriage. The Plaintiff and the Defendant in this case have requested that this Jury make an equitable property division of the property acquired during the marriage, and this is a proper matter for your consideration.

"In determining the question of property division, you are not to concern yourself with the question of alimony or the entitlement of alimony, but rather in determining the issue of property division you are to consider the following.

"In a property division, the Jury should give the wife that property which you find from the evidence is hers and you should give to the husband that which you find from the evidence is his.

"The Court charges you that under the law of the State of Georgia the separate property of each spouse shall remain the separate property of that spouse, except as provided in cases of divorce and alimony on a property division.

"The Court instructs you that you should first assign to each spouse the personal property or assets owned by that party at the time of the marriage, and you should assign to each spouse any property or funds inherited by that spouse during the marriage.

"You should then equitably apportion between the parties the real and personal property and assets acquired during the marriage whether the title thereto is in the name of one spouse or both.

"In making this apportionment, you, the Jury, should consider any evidence of the practice and custom of the parties with reference to their individual incomes or salaries and whether the parties considered their income as joint income without division as one lump sum salary or whether they considered their income as individual incomes, and the purpose and intent of the parties regarding the ownership of the property in question.

"You should also consider which party furnished all or a portion of the purchase money for any items in question and the source from which the property in question was acquired, the duration of the marriage and any prior marriage, if any, of either party, the age, health, occupation, vocational skills and employability of each party, as well as the contribution or services of each spouse to the family unit, the amount and source of income, the estate of each party, if any, the debts, liabilities and needs of each of the parties, as well as the debts against the property and the opportunity of each spouse for future acquisition of assets and income by employment or otherwise.

"You should also consider the intent of the parties as it relates to

the ownership of any particular item of property, and any other fact or circumstance disclosed by the evidence which will enable you to reach the truth of the case and arrive at a correct verdict in this case."

The court did *not* instruct the jury as to the principles set out in our recent case of *Bailey v. Bailey,* 250 Ga. 15 (295 SE2d 304) (1982), amplifying *Stokes v. Stokes,* 246 Ga. 765 (273 SE2d 169) (1980), which established the following proposition: "[P]roperty acquired during the marriage by either party by gift, inheritance, bequest or devise remains the separate property of the party that acquired it, and is not subject to equitable division." Notwithstanding, we believe that the jury was instructed correctly, and the question of equitable division relative to the dwelling house properly submitted to the jury.

As to the trial court's modification of the verdict in such manner as to vacate the jury's award of a one-fourth interest to the husband's mother and to allocate that portion to the husband, we observe that the only person adversely affected thereby is the mother of the husband, who is not party to this appeal.

*Judgment affirmed. All the Justices concur, except Hill, C. J., who concurs in the judgment only, and Gregory, J., disqualified.*

DECIDED JANUARY 18, 1984.

*Paul S. Weiner,* for appellant.
*Jeffrey L. Sakas,* for appellee.

WELTNER, Justice, concurring.
The thesis set forth in *Stokes* appears to be a simple, straightforward rule, which even the casual reader will comprehend. The problem — as evidenced by this case — is not in the formulation of the rule, but in a correct discernment of those transactions which fall within it. Was the transfer of the house to the husband a gift? If so, what, then, was the $4,000 payment by the husband to the mother? Was the transfer part gift and part sale? Or, was it but a sale at a below-market value?

Spouses frequently receive properties from one another and from others, and accomplish transfers back and forth for a myriad of practical and honest purposes. Transfers between husband and wife are not, and should not have to be, executed with the punctilio of advanced accountancy, and there can never be a certain means of tracing economic initiative on a mathematically accurate basis between spouses over the span of a marriage. Hence, I foresee that our rule in *Stokes,* standing alone, is likely to become the wellspring of a newly-emergent stream of litigation.

Of that prospect this very case is harbinger.

Accordingly, there may be profit in considering *Stokes* in its relation to the entirety of potential economic consequences of separation and divorce — which I now undertake to do.

It is a major problem for all who strive for clarity, in any endeavor, that words are inexact indicators of concepts sought to be communicated. Principal among the difficulties flowing from this condition is the fact that a single word may have more than one meaning (which is called polysemy), and that a single concept may be identified by more than one word (which is called synonymy).

The law, of course, is no stranger to this plight. Indeed, a large part of its labor is spent in defining terms and interpreting words — which is but to address, respectively, the confusions engendered by polysemy and synonymy.

And in no field of law is there more confusion arising from words and their meaning than that of domestic relations. That may be understandable because it cuts across so broad a spectrum of the populace, it involves so wide a variety of concerns, it addresses so many agreements couched in lay terms, and it is peopled by warring spouses who are beset with perhaps the poorest memories found in any class of litigants!

As example only, "alimony" is generally understood as something one spouse receives from another spouse. Yet our new Code, at OCGA § 19-6-19 (Code Ann. § 30-220), speaks in terms of "alimony for the support of a child." In the case before us, had the jury awarded to the wife the residence as "alimony" rather than as "equitable division," the basic issue of the case would never have arisen. The parties are the same; the circumstances of the separation are the same; the house is the same. It is the *label* put upon its award by the jury that generates the difficulty.

There should be a way to steer around this shoal. Perhaps it may be found in laying aside, for the moment, all labels which lawyers and laymen have become accustomed to apply, and to consider instead *the substance of the permissible re-arrangement of economic resources cognizable under our law.*

I analyze such substance as follows:

One spouse may be required to transfer to the other spouse, or for the benefit of the other spouse, total or partial ownership or beneficial use of:

(a) specifically enumerated real or personal property;

(b) a stated or a variable amount of money, either designated or undesignated as to its source, either at once or by specified installments or intervals;

(c) a stated or a variable amount of money to be paid at stated

invervals for an indefinite period of time, or to be paid until the death or remarriage of the receiving spouse; or

(d) any combination of the above.

Additionally, one spouse may, in a proper case, acquire from the other spouse exclusive dominion over specific property upon a determination that such property, all along, has been that of the acquiring spouse.

Additionally, one spouse may acquire property or an entitlement to receive payments of money from the other spouse to be used by the acquiring spouse for the benefit of dependent children of the paying spouse.

It will be seen, of course, that:

(a) includes what we have come to label as "lump sum alimony," OCGA § 19-6-5 (a) (Code Ann. § 30-209), "equitable division," *Stokes v. Stokes,* 246 Ga. 765 (273 SE2d 169) (1980), and "implied trust." *Harrell v. Harrell,* 249 Ga. 170 (290 SE2d 906) (1982).

(b) includes what we call "lump sum alimony," which may be payable at once, or payable in periodic installments, or which may be a requirement that one spouse fulfill stated obligations to third parties for the benefit of the other spouse;

(c) includes what we call "periodic alimony," or "permanent alimony," as well as a requirement to fulfill an obligation to a third party for the benefit of the other spouse.

The two additional categories encompass what we call "implied trust" and "child support."

All of these are but differing ways in which the trior of fact may allocate between the spouses the existing or anticipated economic resources which appear to be available to them.

The basis for such an allocation is plain: the needs of each spouse and the ability of the other to pay, *Anderson v. Anderson,* 237 Ga. 886, 892 (230 SE2d 272) (1976), the contributions of each spouse to the marriage, *Stokes,* supra, and the ownership claims of either spouse against the other. *Harrell,* supra. It is the *nomenclature* which we have assigned to the varying forms of permissible allocation of economic resources which creates the confusion in our law.

As example, the obligation of one spouse to pay "permanent alimony" or "periodic alimony" terminates upon the death of the paying spouse, *Dolvin v. Dolvin,* 248 Ga. 439 (284 SE2d 254) (1981), or upon the death of the surviving spouse, *Ramsay v. Sims,* 209 Ga. 228, 233-34 (71 SE2d 639) (1952), or upon the remarriage of the receiving spouse. OCGA § 19-6-5 (b) (Code Ann. § 30-209). Remarriage by the receiving spouse does *not* terminate the obligation of the paying spouse to continue payments intended as "lump sum alimony" or as

"equitable division." *Head v. Hook,* 248 Ga. 818 (285 SE2d 718) (1982). Nor would such an obligation likely terminate even upon the remarriage of the spouses to each other. *Moore v. Moore,* 249 Ga. 27 (287 SE2d 185) (1982).

Adultery or desertion is a bar to "alimony." OCGA § 19-6-1 (Code Ann. § 30-201). Neither is a bar to "equitable division." *Peters v. Peters,* 248 Ga. 490, 491 (2) (283 SE2d 454) (1981).

While "alimony" in the form of "separate maintenance" (yet another label) may be awarded absent a pending action for divorce, OCGA § 19-6-4 (a)(2), (3) (Code Ann. § 30-210), "equitable division" may *not* be so awarded — even when the spouse seeking such allocation is murdered by her husband during the pendency of an action for divorce and "equitable division." *Segars v. Brooks,* 248 Ga. 427 (284 SE2d 13) (1981).

An allocation of resources as "permanent alimony" or "periodic alimony," or as "alimony for the support of the children of the parties," or as "child support" is subject to modification. OCGA §§ 19-6-14 (Code Ann. § 30-206), 19-6-19 (Code Ann. § 30-220). "Lump sum alimony" is not subject to modification. OCGA § 19-6-21 (Code Ann. § 30-222).

It will be understood that the preceding does not purport to exhaust the list of permissible allocations, and that the ramifications of labeling appear by way of illustration, and not as a comprehensive restatement of existing principles.

And, as with the rule in *Stokes,* there is little quarrel or difficulty with the sequelae of any given specie of allocation — *once its label is firmly affixed.*

Thus, a jury awards to a spouse "$300 a month for ten years," and soon thereafter the receiving spouse remarries. If the allocation is "permanent alimony," it is terminated; *contra,* if it is "lump sum alimony" ($36,000 payable in 120 equal monthly installments).

Again, the problem is one of taxonomy, that is, of assigning the correct scientific name to the specie under investigation.

Courts have long undertaken, in case of need, to synthesize sections of a single statute, *Benton Bros. v. Savannah,* 219 Ga. 172 (132 SE2d 196) (1963), and to reconcile seeming conflicts between more than one statute. *Fender v. Fender,* 249 Ga. 765 (294 SE2d 472) (1982). And, of course, every court may clarify its own orders. *Davis v. Davis,* 250 Ga. 206 (296 SE2d 722) (1982), *Bettis v. City of Atlanta,* 249 Ga. 398 (291 SE2d 507) (1982).

I now suggest such a synthesis relative to the substantive law of domestic relations as it pertains to the permissible allocation of economic resources between the parties to a marriage. I do so — not to alter any legal precept — but to eliminate the want of clarity

occasioned by the polysemies and synonymies abounding in the field, and by looking solely to the *substance* of economic consequences now cognizable by law.

First, the basis for allocation of resources remains as it has been — need and ability to pay, a fair allocation of marital property, and the resolution of disputed claims of ownership.

Second, all the factors which now may be considered by the trior of fact remain unchanged.

Third, all principles relative to waiver of rights relative to modification remain unchanged.

Fourth, the concept of "implied trust" continues.

In the careful analysis of our law, it becomes apparent that all allocations of economic resources between spouses are, by their very nature, either *fixed,* or *terminable.* Fixed allocations, being already perfected (or completed, or vested) are *not* subject to modification. Terminable allocations are allocations of existing or anticipated economic resources the right to receive which, or to continue to receive which, is terminable either *ex vi termini* the allocation itself, or by operation of law.

Under this latter head, "terminable by operation of law," is included in allocation of economic resources to a spouse which must be paid or delivered in the future, and which either (a) contains no limitation as to the time during which such payments are required to be paid, or which (b) contains an express provision that it shall terminate upon death or remarriage of the receiving spouse. (For purposes of this definition, an allocation is not "terminable" except upon the foregoing conditions *only,* and notwithstanding the fact that the allocation may contain other express conditions subsequent whereby further entitlement shall cease.)

Applying existing principles of law to the concretions I have now identified, it will become clear that *only* those economic allocations which are terminable *by operation of law* can be subject to modification. Only they are terminable upon the death or remarriage of the receiving spouse. Only they are terminable upon the death of the paying spouse.

Thus, this analysis disturbs no fixed principle of law, but merely by altering terminology diminishes, I believe, confusion and error. Stated differently, courts should decide legal consequences by determining what something *is,* rather than what it is *called.*

I now observe that the bar of adultery or desertion imposed by OCGA § 19-6-1 (Code Ann. § 30-201) prohibits *only* the award by the trior of fact of an allocation of economic resources which is "terminable by operation of law" as I have defined it, and cannot bar award of any other kind of allocation. I trust that the propriety of this

synthesis is evident from the fact that a spouse may acquire, under the label of "equitable division," or in a proper case, under "implied trust," that which would be barred (by adultery or desertion), were it sought under the label "alimony." That, I perceive to be the only change indicated by this thesis — and it is but a modification of "forms-of-action" theory, not of substantive right or expectation.

What would all this do to *Stokes? Stokes* simply recognized that a spouse's non-economic contributions to a marriage might be reflected in an "equitable division" of property, notwithstanding the incidence of legal ownership, and that such an allocation might be appended to another allocation calculated, in theory, upon need and ability to pay. See Chief Justice Hill's special concurrence, 246 Ga. at 771. The exclusions outlined in *Bailey* reflect the logical proposition that such a recognition (for which "equitable division" is allocated) would be inapposite to property acquired by "gift, inheritance, bequest or devise," as to which no such contribution has been made.

If we could cast off the servitude of our old labels, which generated the distinction between "alimony" and "equitable division," *Stokes* and *Bailey* would become obsolete.

To what practical use may this excursus be put? I hope that this analysis will be considered by the trial bench and bar, leading finally to the abandonment of a confusing lexicon which continues to wreak havoc. I hope that the *substance* which I have identified, by terms unladen with a century's accumulation of semantic freight, will someday become the basis for negotiations, agreements, pleadings, court orders, trials, jury instructions,[1] verdicts, judgments, appellate

---

[1] By way of illustration, I suggest that the following may serve as a base for the framing of jury instructions consistent with the suggestions of this concurring opinion:

Considering all the facts and circumstances of the case, the needs and economic resources of each party, the contributions to the marriage of each party, and their respective claims to ownership of property (if any) you may, if you see fit, allocate to one party, or to each of the two parties, such economic resources — both existing and reasonably anticipated — as you determine to be fair and just.

Such an allocation may include specially identified property, or a stated sum of money, or a requirement that one party fulfill stated obligations for the benefit of the other party. Any allocation of money may be in a lump sum amount, or may be payable over a specified period of time in specified amounts, or it may be payable indefinitely. In this last event — specified amounts to be payable indefinitely — the obligation to pay would terminate upon the remarriage of the party receiving the money, or upon the death of either party.

Any allocation you may decide to make may include one or more of these alternatives; or you may, if you see fit, decide to allocate nothing to either party.

Whatever you do must be based upon your determination of what is fair and just to both parties under all the facts and circumstances of the case.

opinions, statutory enactment, and commentary.

For underlying all of what I have said here is the sure knowledge that reason, clarity, and simplicity are first principles of justice.