**In re David G. ACKLEY, Debtor.**

**David G. ACKLEY, Plaintiff,**

v.

**Patricia R. ACKLEY, Defendant.**

**Bankruptcy No. G92–20423–REB.
Adv. No. 93–2035.**

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

Dec. 19, 1994.

1006

Charles Ratz, Gray, Gilliland & Gold, P.C., Atlanta, GA, for plaintiff.

G. Michael Banick, Bruce Callner, Alembik, Fine & Callner, Atlanta, GA, for defendant.

### *ORDER*

ROBERT E. BRIZENDINE, Bankruptcy Judge.

This adversary proceeding is before the Court on cross-motions for summary judgment. In his complaint, Plaintiff–Debtor seeks a determination that a jury award of $250,000 to Defendant arising out of the parties' divorce is dischargeable because it constitutes a property settlement. Defendant counters that the obligation is in the nature of alimony, maintenance, or support and thus is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). After reviewing the record and evidence presented, and after considering the argument presented in the briefs, the Court concludes that Defendant's motion should be granted and Plaintiff–Debtor's motion should be denied.

The following material facts are not in dispute. On December 2, 1992, after a jury trial, the Superior Court of Cobb County, Georgia entered a Final Judgment and Decree in which the parties were granted a divorce. The provisions of the Decree also fixed and adjusted the parties' rights and obligations and the court incorporated therein the jury's verdict regarding child support, property division, and alimony. Defendant herein was awarded custody of the minor child of the marriage and child support was granted to her for a certain period of time in the amount of $1,250 per month. Additionally, various debt obligations and certain real and personal property were equitably divided between the parties. Finally, the jury granted Defendant herein the following award denominated as alimony:

We, the jury, find as to the issue of alimony [the following appearing to be inserted by hand]

(1) That the Plaintiff [Defendant herein] shall receive as alimony in kind the house at 2468 Hampton Glen Ct. Marietta, Ga. and all furnishings therein.

(2) That the Plaintiff [Defendant herein] shall receive as lump sum alimony the sum of $250,000 to be paid at the rate of $50,000 per year for a period of 5 years to begin on April 1, 1993 and every year thereafter until complete sum is paid.

(3) Periodic alimony: None[.]

*See* Jury Verdict of October 5, 1992, attached as Exhibit "4" to Defendant's motion.

In paragraph 19 of the Decree, the trial judge basically restated these awards, but added, with respect to the property located at 2468 Hampton Glen Court, that said transfer "is subject to all liens and encumbrances which Plaintiff [Defendant herein] shall assume and pay in a timely manner." *See* Final Judgment and Decree of December 2, 1992, at 10–11, attached as Exhibit "1" to Defendant's motion. Similarly, in paragraph 20, the judge added that the award of lump sum alimony "is not contingent upon the life of either party, nor is it contingent upon the remarriage of either party." *Id.* at 11.

Based on Defendant's uncontroverted affidavit, it appears that the parties had been married ten years during which time she worked for Plaintiff in his business without pay. *See* Exhibit "B," attached to Affidavit of Patricia Ackley.[1] Further, she was the primary caretaker of their infant son and maintained the household. The couple enjoyed a high standard of living and acquired substantial property. Defendant further states that a significant disparity existed with respect to their incomes. Whereas her monthly income was approximately $2,083 at the time of the trial, she claims that Plain-

1. The Court previously granted Defendant's request to file a portion of the transcript of the jury instructions and that in lieu of transcribing her testimony as to need, Defendant could file an affidavit regarding same which she did. Although Plaintiff filed a general response, he did not object to the affidavit and filed no counteraffidavit or other evidence tending to place Defendant's statements in dispute. In addition, Plaintiff's objection to similar matters in the affidavit previously filed by Defendant's counsel has been rendered moot by the filing of Defendant's own affidavit and the transcript.

tiff's gross monthly income was $14,044. Notwithstanding Plaintiff's contention that a substantial portion of his assets were separate, nonmarital property, Defendant maintained that her former husband had a vast estate and that she was entitled to an award of alimony and equitable division of property.[2] Defendant also avers that she needed support, that she testified about such need at the trial, that her contributions to the marriage warranted an award of alimony, and that Plaintiff had the ability to pay same from his substantial income and personal resources.

Under Section 523(a)(5), the burden of proof is on Defendant to establish that the lump sum cash award of $250,000 was "actually in the nature of alimony, maintenance, or support" as distinguished from a property settlement, and thus nondischargeable. *See Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 905 (11th Cir.1985); *Edwards v. Edwards (In re Edwards)*, 31 B.R. 113 (Bankr. N.D.Ga.1983); *see also Youngman v. Youngman (In re Youngman)*, 122 B.R. 612, 614 (Bankr.N.D.Ga.1991). Although the validity and enforceability of a claim is determined by reference to state law, federal law governs with respect to the characterization of an obligation as support and thus, whether it is dischargeable in bankruptcy. In this case, issues regarding alimony and property division were submitted to a jury which rendered a verdict. Accordingly, this Court's inquiry is directed to ascertaining the substance of the obligation and the jury's intent in regard thereto. *See Long v. West (In re Long)*, 794 F.2d 928, 931 (4th Cir.1986).[3]

Plaintiff argues that the label affixed to the award in state court does not conclusively establish the nature of the obligation in question. Instead, he contends, the Court must focus on the substance of the obligation rather than its form. It is the function or purpose for which the award is intended to serve that ultimately is determinative on the issue of dischargeability. Further, he claims that the award's structure in providing for periodic payments until a stated sum certain is paid has consistently been held under Georgia law to be a property settlement. *See Taulbee v. Taulbee*, 243 Ga. 52, 252 S.E.2d 481 (1979). In addition, Plaintiff contends that an intent to settle property rights is expressed when such payments, as in this case, continue irrespective of death or remarriage. *See Hathcock v. Hathcock*, 246 Ga. 233, 271 S.E.2d 147 (1980), *appeal after remand*, 249 Ga. 74, 287 S.E.2d 19 (1982).

Defendant counters that state law is not determinative herein and that the Georgia cases cited by Plaintiff address whether a particular award is modifiable, not whether an award is intended as support. *See Harrell, supra*, 754 F.2d at 904–05; *Myers v. Myers (In re Myers)*, 61 B.R. 891, 894–95 (Bankr.N.D.Ga.1986); *see also Collins v. Collins*, 208 Ga.App. 862, 863, 432 S.E.2d 605 (1993) (purpose of a property settlement may be to provide support); *accord Youngman, supra*, 122 B.R. 612. Further, recipients often want a nonmodifiable award, but such a characteristic, she claims, is not necessarily inconsistent with an award of support.[4] Defendant asserts that the fact that a lump sum award was deliberately entered in the verdict as alimony, separate from and in addition to a specific verdict for the division of property, proves that the lump sum alimony award was

---

**2.** In the financial affidavit filed in state court, a copy of which is attached to her affidavit herein, Defendant stated that her net monthly income was $1,854.50 (subject to certain additional tax payments), and that the amount of support she needed was $2,698.50 to meet total monthly expenses of $4,553. The jury awarded Defendant approximately $4,166 per month ($250,000/60 months), which was $1,467 more than the amount requested. *See* Defendant's Affidavit, Exhibit "B."

**3.** Due to the nature of this inquiry, the Court concludes that the record is complete and a trial would not be helpful in resolving this matter.

**4.** Defendant also argues that the conclusion in *Hathcock, supra*, that the payments in question had some purpose other than for support, was not based on the fact that they did not terminate on death or remarriage, but instead, because another provision in the parties' agreement had already specifically addressed alimony payments. 246 Ga. at 234, 271 S.E.2d 147. Based on a complete reading of that opinion, however, this Court concludes that both factors contributed to such ruling.

clearly and expressly intended for her maintenance and support.

Both parties seek to bolster their positions by referring to the instructions presented to the jury. For example, Defendant contends that the definition of alimony given by the trial judge, coupled with her "need," shows that the award was meant to provide for her support. She states that the trial judge explained that alimony, as distinguished from a property settlement, is an allowance from one party's estate for the support of the other, that can be awarded in various forms. Even in its nonmodifiable lump sum form, she contends, such an award is still alimony because it is awarded to provide for support.

■ Plaintiff argues, however, that the jury was told, in effect, that lump sum alimony is a method of transferring property that could not otherwise be transferred under equitable division. Defendant disputes this contention and argues that the jury was not told that lump sum alimony and equitable division were comparable devices for transferring property. She claims that the import of the instructions to the jury was, upon finding that Defendant was entitled to alimony, that it could then fashion such an award from either Plaintiff's marital property or his separate non-marital estate.[5]

Further, Plaintiff maintains that awards which are unconditional as to death or remarriage, as in this case, are not intended to address the support needs of the recipient. The jury, in its verdict as incorporated by the court in its Decree, decided that Plaintiff would be required to pay a non-terminable lump sum over a period of five years regardless of death and that these payments of future alimony would not cease upon remarriage. The "permanent," non-contingent structure of the lump sum alimony award in question, Plaintiff argues, clearly demonstrates the jury's decision to grant Defendant a "property award" in fixed installments and not periodic alimony, which is more closely associated with need and which, unless modified, may continue indefinitely absent death or remarriage.

Additionally, Plaintiff asserts that had the jury intended to award support, it would have provided that the lump sum installment payments were to begin immediately and it would have tailored the award to match Defendant's needs as reflected in her financial affidavit, neither of which, he contends, it decided to do. By awarding approximately $4,166 per month, in addition to $1,500 in child support, instead of $2,698.50, the amount claimed as needed in the financial affidavit, the jury could not have intended the award to relate to maintenance needs.[6] Thus, he asserts, the award in this case is different in substance from the obligation in *Myers, supra,* 61 B.R. at 894–95.[7]

In response, Defendant counters that in structuring the payment terms, the jury, realizing that alimony awards are based on ability to pay as well as need, could just as likely have been motivated by a desire to give Plaintiff six months to prepare to make such payments. Further, the jury could also have determined that such a delayed payment schedule would not have imposed an undue burden on Defendant given her income and assets at the time. Defendant asserts that given these facts, any definitive assessment of intent arising from the terms of payment is illusory and based on mere conjecture.

Further, she argues that Plaintiff has introduced no authority in support of the contention that unless an award is precisely equivalent to a specific, basic minimum need, it is not in the nature of support. Similarly, she argues that *Myers, supra,* does not stand for such a proposition. *See also Harrell,*

---

5. Alimony is broader in scope than equitable division in terms of the range of property subject to such an award and is subject to a variety of payment terms.

6. As previously mentioned, it appears that only $1,250 a month was awarded as child support. Decree at 8.

7. Plaintiff contends that in *Myers, supra,* the jury's lump sum award was intended as support

given the fact that the increase in the sums required to be paid to the recipient spouse was equivalent to her monthly mortgage payments. Without the award, the recipient spouse would have been unable to pay from her salary the monthly mortgage payments and her normal living expenses. 61 B.R. at 894.

*supra,* 754 F.2d at 906. In any event, she contends, the figure given in the affidavit does not reflect her overall need because two loans totaling over $13,000 were omitted. She also states that the award in issue was also related to maintaining her standard of living.

Structure generally refers to matters such as the lump sum nature and method or terms of payment of an obligation, its amount, and whether or not payment is modifiable or subject to certain contingencies such as death or remarriage. Although an award's structure is an important component in the group of factors frequently used in analyzing such awards, this particular factor is of limited probative value in the present case. Moreover, Plaintiff's argument concerning the award's structure is illustrative of an inherent problem in ascertaining the purpose of lump sum alimony awards in jury verdicts when analyzed under Section 523(a)(5).

■ As previously noted, state law is not determinative herein. The Court must focus on the substance of the obligation to determine the function or purpose for which the award is intended to serve. Nonetheless, it was within the contours of state law that the jury fashioned relief. This Court must, therefore, be mindful of state law in construing the purpose of the award as set forth in the verdict. In Georgia, although they retain important variations, the methods for disposing of property incident to a divorce, to wit; alimony (periodic or lump sum), property settlement, property division, and equitable division, have tended to converge in terms of their overall purpose.[8] In addition, the un-

derlying considerations which influence such awards have begun to overlap.

■ Because alimony may be awarded from any property of a spouse, regardless of title, and, because lump sum awards are immune from modification (O.C.G.A. § 19–6–21), lump sum alimony developed as a means for granting complete relief on an equitable basis in the variety of situations confronted in a divorce context. *See Wise v. Wise,* 156 Ga. 459, 475, 119 S.E. 410 (1923) (award of absolute estate upheld as permanent alimony); *see also Heflinger v. Heflinger,* 161 Ga. 867, 873, 132 S.E. 85 (1925) (litigious disposition of husband warranted award of absolute title).[9] Such decisions indicate that a jury, in the exercise of its broad discretion, may decide that an award of an absolute estate is the best way to address adequately support needs in a particular situation.

Moreover, in determining the form of alimony awards, juries were allowed to consider the marital contributions of an ex-wife in her own right, as compared with the conventional assumption that alimony arises solely out of the ex-husband's marital obligation. *See generally Davis v. Welch,* 220 Ga. 515, 140 S.E.2d 199 (1965). Historically, the source of an alimony obligation was defined in terms of the marital relationship, and alimony awards were conditioned upon, and could never exceed, actual need or ability to pay. At the same time, however, they remained vulnerable to the moral judgments of a jury as to the cause or reasons for the marriage's failure. A direct connection was also eventually recognized between marital sacrifice and support needs based upon the diminution in earning capacity caused by an ex-spouse's

8. These labels describe different ways as recognized under Georgia law by which economic resources may be allocated or rearranged in a divorce situation. In *Rooks v. Rooks,* 252 Ga. 11, 14–18, 311 S.E.2d 169 (1984), the late Justice Charles Weltner advocated an analysis in which the focus, in determining modifiability, is on the substance of the allocation in issue rather than the label affixed to it, i.e. alimony or property settlement. *See also Stone v. Stone,* 254 Ga. 519, 330 S.E.2d 887 (1985); *accord Estlund v. Estlund,* 260 Ga. 225, 391 S.E.2d 763 (1990) (Weltner, J., concurring). It remains to be seen whether this analytical framework will be fully integrated into Georgia law. *See e.g. Yates v. Yates,* 259 Ga. 131, 377 S.E.2d 677 (1989) (separate spousal property that may not be awarded

under equitable property division cannot be awarded on the basis that such property could have been granted as alimony). Justice Weltner filed a dissent in that case. *Id.* at 132–33, 377 S.E.2d 677.

9. *Accord Gorman v. Gorman,* 239 Ga. 312, 314, 236 S.E.2d 652 (1977). *Gorman* is representative of a line of cases which roughly paralleled the development of lump sum alimony by expanding the partitioning of property beyond strict title concepts. It held that courts have the power to equitably divide property when requested "to avoid further litigation and to do complete justice." 239 Ga. at 314, 236 S.E.2d 652.

absence from the public job market. *See Moon v. Moon,* 237 Ga. 635, 229 S.E.2d 440 (1976); *compare* O.C.G.A. § 19–6–5(a)(7).

A jury has virtually unlimited power in awarding alimony in terms of the scope of property subject to such an award and the structure or manner of its payment. *See* O.C.G.A. § 19–6–5(a); *see also Stumpf v. Stumpf,* 249 Ga. 759, 760, 294 S.E.2d 488 (1982). Additionally, the immunity of lump sum alimony awards from modification played a basic role in their development as a means of fully meeting all of an ex-spouse's needs. Thus, although modifiability may suggest that a particular award is intended to address need which can change over time, it is not necessarily the touchstone in determining the presence of such an intent.

Although lump sum alimony was distinguishable from traditional property settlement, wherein title/ownership or trust law-based rights were customarily applied, it nonetheless resembles a type of earned property right based on its immunity from modification and termination by reason of death or remarriage. *See e.g. Newell v. Newell,* 237 Ga. 708, 229 S.E.2d 449 (1976); *Herbert v. Huggins,* 231 Ga. 489, 202 S.E.2d 443 (1973). Further, some awards incident to divorce intended as alimony may have been deliberately characterized as either lump sum alimony or property settlement to ameliorate the harshness of standard alimony restrictions.[10]

As a result, such awards are often difficult to distinguish. *See e.g. Coleman v. Coleman,* 240 Ga. 417, 424–25, 240 S.E.2d 870 (1977) (Hill, J., dissenting); *Newell, supra,* 237 Ga. 708, 229 S.E.2d 449; *Herbert v. Huggins, supra,* 231 Ga. 489, 202 S.E.2d 443. Adding to this confusion is the acknowledgement that despite its label, the purpose of a property settlement may be to satisfy support or maintenance needs. *See Collins, supra,* 208 Ga.App. 862, 432 S.E.2d 605, *citing, Manuel v. Manuel,* 239 Ga. 685, 687–88, 238 S.E.2d 328 (1977).

In the final analysis, these state law classifications are of limited usefulness in determining dischargeability issues under Section 523(a)(5). More important for this Court's task is the integration between the underlying rationale in the lump sum alimony cases and the rationale expressed in decisions like *Gorman, supra,* concerning property division.[11] In addition, the statutory definition of alimony has been expanded and as a result, both state court equitable division and alimony awards may result from a consideration of the same factors. These include need, ability to pay, and compensation for marital contributions or sacrifices. *See e.g.* O.C.G.A. § 19–6–5(a); *compare Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169 (Hill, J., concurring); *see also Rooks, supra,* 252 Ga. 11, 14–18, 311 S.E.2d 169 (Weltner, J., concurring); *accord Holler v. Holler,* 257 Ga. 27, 28, 354 S.E.2d 140 (1987).[12]

10. Unlike property settlement, alimony, including lump sum alimony, is subject to certain significant limitations based on marital fault, such as adultery or desertion. *See e.g.* O.C.G.A. § 19–6–1(b); *see also* O.C.G.A. § 19–6–19(b) (post-marital fault); *cf. Yarbray v. Young,* 236 Ga. 784, 225 S.E.2d 315 (1976) (property division upheld notwithstanding denial of alimony and absence of evidence as to title); *McLane v. McLane,* 224 Ga. 748, 164 S.E.2d 821 (1968).

Efforts to classify such obligations can be problematic but are driven by the fact that very different consequences may result depending upon how an obligation is ultimately characterized. *See e.g. Winokur v. Winokur,* 258 Ga. 88, 90, 365 S.E.2d 94 (1988); *see also Rooks, supra,* 252 Ga. at 14–18, 311 S.E.2d 169 (Weltner, J., concurring). Thus, detailed rules developed to aid in distinguishing between alimony and lump sum settlement awards for purposes of determining whether an award was modifiable or terminable upon certain conditions. *See e.g. Taulbee, supra,* 243 Ga. 52, 252 S.E.2d 481. As noted

previously herein, modifiability is not determinative of an intent to provide support in every instance.

11. *See* note 9, *supra.* These rationales merged in a conceptual sense when equitable division was recognized in Georgia. *See Stokes v. Stokes,* 246 Ga. 765, 273 S.E.2d 169 (1980).

12. Due to their overlapping considerations, Georgia's alimony provision may be construed as an indication that equitable division property awards should be considered within the framework of alimony. It may have been designed, however, to accommodate Justice Hill's proposal in *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169, that allocations of property in a divorce situation should be coordinated. For example, equitable division of property would assume the function heretofore served by lump sum alimony. Alimony determinations would come last and would take into account the overall effect of a preceding equitable division award in terms of

Likewise, a specific award within a verdict may serve multiple purposes. For example, a lump sum payable in installments could be interpreted as a recognition of a pre-existing property right based on equitable considerations arising from marital contributions. Further, it could also be intended to address support needs during a limited period of rehabilitation for purposes of reentry into the public job market. Because such related functions are no longer restricted to a certain form of property allocation, a jury may seek to advance both purposes in the same award.[13]

In sum, it is becoming increasingly difficult to untangle the constituent elements of such jury awards and conclusively confirm the existence of a definitive expression of intent in relation to specific transfers of property. Traditional hallmarks of alimony or property settlement must be viewed through the lens of these developments in the law because it is against this background that juries are formulating their awards. Thus, this Court concludes that particular allocations of property are more accurately analyzed in terms of the overall purpose and effect of the verdict as a whole. In this analysis, attention should be given to the relationship of the various components of the verdict to each other and the factual circumstances of the parties as well as their marital situation.

In addition, the role and influence of the trial judge in this process must be carefully considered. Under state law, a decree is required to give full effect to a verdict. O.C.G.A. § 19–5–13. In this case, the jury was told that absent a contrary expression, a future obligation to pay alimony would be subject to the remarriage of the Defendant. Transcript of October 2, 1992 at 12; *see also* O.C.G.A. § 19–6–5(b); *Daopoulos v. Daopoulos,* 257 Ga. 71, 354 S.E.2d 828 (1987). The verdict had no such language

which would seem to indicate that the jury wanted the award to be subject to remarriage. *See* Exhibit "4," attached to Defendant's motion. Yet, the Decree, in paragraph 20, prepared by the judge who presided over the trial, states that the lump sum alimony award in issue is not contingent upon remarriage by either party. *See* Exhibit "1" at 11. Given such ambiguity, this Court, at best, can only conclude that the award's resulting immunity from remarriage is not a reliable indicator of purpose.

Although it is not conclusive, the jury's deliberate designation of the award as alimony in a distinct category in its verdict, as distinguished from its prior, separate division of property, does provide relevant insight into the purpose of the award. *See Long, supra,* 794 F.2d at 931; *Myers, supra,* 61 B.R. at 894; *see also Youngman, supra,* 122 B.R. at 614–15; *accord Harrell, supra,* 754 F.2d at 906. Further, other customarily used factors also tend to support the conclusion that the function of the award was to provide for the support needs of Defendant. *See generally Davidson v. Davidson (In re Davidson),* 104 B.R. 788, 794–95 (Bankr. N.D.Tex.1989), *aff'd,* 133 B.R. 795 (N.D.Tex. 1990), *rev'd on other grounds,* 947 F.2d 1294 (5th Cir.1991); *see also Montgomery v. Montgomery (In re Montgomery),* 169 B.R. 442, 444 (Bankr.M.D.Fla.1994). The jury's decision to grant Defendant a substantial lump sum alimony award appears to have been made in recognition of her actual need for some support. A vast difference existed between the parties in terms their respective economic positions as evidenced by the disparity in their relative incomes. Further, the award appears to account for the benefits she would have received had the marriage continued and for the nonexistence of other means of support at her disposal.

As to the parties' relative work skills, business opportunities, or educational level, De-

---

the amount and liquidity of the resulting estate. Alimony awards would thus become more closely reflective of actual maintenance needs. *See* O.C.G.A. § 19–6–5(a)(7); *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169 (Hill, J., concurring).

**13.** Indeed, a review of the jury charge reveals that although various means of allocating prop-

erty incident to a divorce were described, the jury was given little if any specific guidance as to when a particular type of award should be used as opposed to another, other than perhaps, as Defendant argues, when it first finds that alimony in some form is warranted.

fendant states in her affidavit that she was just beginning her career at the time of the divorce trial and that she was a student. From the description of her duties while working with her ex-husband, it appears that Defendant did possess functional work skills. It is also apparent, however, that she did not have the prospects for business opportunities equal to those which Plaintiff enjoyed. Thus, although she had a reasonable expectation of gainful employment following the divorce, she needed time for additional education and training to enhance the marketability of her job skills before she could become self-supporting and financially independent. Meanwhile, she faced immediate needs such as any liens or encumbrances on the family home awarded to her as alimony in kind and other expenses which had to be paid. Given these circumstances, it is reasonable to conclude that the jury determined that Defendant was in need of support, and its decision to fashion an award which exceeded Defendant's request by approximately $1,467 is not inconsistent with an intent to address such support needs.[14]

Based on a review of the substance of the lump sum award in issue in terms of the totality of the various factors as recognized for analyzing obligations under Section 523(a)(5), as well as the overall arrangement of the jury's verdict, the Court concludes that the award's function was to provide for Defendant's daily needs while assisting in her rehabilitation for a limited period of time after the divorce. Thus, the lump sum obligation created incident to the parties' divorce is in the nature of alimony, maintenance, or support, and it is nondischargeable.

Accordingly, for the foregoing reasons, it is

**ORDERED** that Defendant's motion for summary judgment is **granted** and Plaintiff's motion for summary judgment is **denied.**

**IT IS SO ORDERED.**

---

14. As noted above, the jury awarded Defendant approximately $4,166 per month ($250,000/60 months), which was $1,467 more than the amount requested of $2,698.50.